784 A.2d 712

AVIATION CHARTERS, INC., PLAINTIFF–APPELLANT,
v. AVEMCO INSURANCE COMPANY,
DEFENDANT–RESPONDENT.

Argued October 10, 2001—Decided November 20, 2001.

*George T. Dougherty,* argued the cause for appellant (*Katz & Dougherty,* attorneys).

*John E. Salmon,* argued the cause for respondent (*Rawle & Henderson,* attorneys; *Mr. Salmon* and *Joseph A. Ricchezza,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this aviation-insurance case is whether the insured, whose covered aircraft sustained damages while being operated by a pilot who lacked the necessary hours of experience to be covered by the policy, may nonetheless recover when there was no causal nexus between the accident and the pilot's lack of experience. The trial court ruled in favor of the insured. In a published opinion, a divided Appellate Division reversed. *Aviation Charters, Inc. v. Avemco Ins. Co.,* 335 *N.J.Super.* 591, 593, 763 *A.*2d 312 (2000). We hold that, under the facts of this case, the absence of causality is not a justifiable basis to disregard the unambiguous policy provisions and afford coverage.

## I.

The facts are undisputed. On February 10, 1998, Dennis Kripov was taxiing a twin-engine Piper Seneca II airplane on a runway just after touchdown at the Robbinsville Airport in Trenton, New Jersey, when the nose wheel landing gear of the aircraft collapsed, causing damage to the aircraft. The aircraft is owned by plaintiff Aviation Charters, Inc. (Aviation Charters). Kripov was an employee of Aviation Charters who had logged approximately 2,000 hours of flight time at the time of the accident. The cause of the gear collapse was the failure of a spring device within the nose gear of the aircraft. The failure was a purely mechanical malfunction and would have occurred irrespective of Kripov's experience as a pilot.

The Piper Seneca II airplane was insured under a policy issued by defendant Avemco Insurance Company (Avemco). Aviation Charters was the named insured under that policy. Although Aviation Charters owned other airplanes that were insured by Avemco, the policy involved here covered only the aircraft Kripov operated on February 10, 1998. After the accident, Aviation Charters made a timely claim under the policy for $52,000 to repair damage to the aircraft.

The policy that was written to cover only the aircraft involved in the accident contains two sections that are pertinent to this appeal. The first is the "Approved Pilot Endorsement," which provides that "[t]his policy applies when your insured aircraft is operated in flight by a pilot who meets all of the ... requirements" specified in the endorsement. Among other things, the endorsement requires that the pilot must have logged 5,000 total flight hours, 300 hours in a similar aircraft, and 10 hours in the same make and model.

The second pertinent category of the policy deals with exclusions and definitions. Those sections require that the insured aircraft be "operated in flight by a pilot who is approved" under the terms of the "Approved Pilot Endorsement." The policy defines "in flight" as "the time starting when your insured aircraft moves forward for takeoff and continues until it has landed. It has landed when it has safely stopped or left the runway under control." The parties agree that the accident occurred while the aircraft was "in flight." In addition, the policy contains an exclusion stating: "This policy does not cover bodily injury, property damages or loss ... [w]hen your insured aircraft is ... operated in flight by a pilot who is not an 'approved' pilot." Thus, the Approved Pilot Endorsement requirement of an "approved pilot" to operate the aircraft while it is "in flight" is intended to be both a condition of coverage and a coverage exclusion.

After Avemco's investigation disclosed that Kripov was not an "approved pilot" because he had logged only 2,000 hours and not 5,000 hours, Avemco denied coverage for the accident. Aviation

Charters then instituted the present litigation. The parties filed cross-motions for summary judgment. The Law Division granted partial summary judgment to Aviation Charters. A divided Appellate Division reversed. Aviation Charters appealed as of right by virtue of *Rule* 2:2–1(2). We now affirm the judgment of the Appellate Division substantially for the reasons expressed in the court's majority opinion. We add the following, however, to make clear that we do not adopt a *per se* rule holding that the absence of causality never can be the basis for disregarding an unambiguous exclusionary clause in an insurance policy.

## II.

Judge Lesemann's dissent below relies on this Court's opinion in *Cooper v. Government Employees Insurance Co.*, 51 *N.J.* 86, 237 *A.*2d 870 (1968), to support his view that, in the absence of causality and a lack of prejudice to the insurer, coverage should be extended to the insured. The dissent also reasons that our opinions in *Zuckerman v. National Union Fire Insurance Co.*, 100 *N.J.* 304, 495 *A.*2d 395 (1985), and *Massachusetts Mutual Life Insurance Co. v. Manzo*, 122 *N.J.* 104, 584 *A.*2d 190 (1991), do not support Avemco's position in denying coverage.

The Court's focus in *Cooper* on the expectations of the parties when the policy was written has no application to the present issue before us. *See Cooper, supra,* 51 *N.J.* at 93–94, 237 *A.*2d 870. We were informed at oral argument that Aviation Charters was aware that it could have obtained for a higher premium a policy for the aircraft involved in the accident that required fewer total pilot-flight hours. Indeed, Avemco had written such a policy for Aviation Charters for other airplanes. Therefore, the parties knew that the pilot's total flight hours directly relate to the risks against which Aviation Charters was insured. The 5,000 hours for an approved pilot undoubtedly influenced Avemco's determination when it estimated both the degree and character of the risks in order to calculate a premium. Viewed in that context, the 5,000 hour requirement is highly material to both the insurer and the

insured. In fact, the 5,000 hour requirement was so important to Avemco's policy that it was a precondition to the inception of any coverage before consideration of the exclusionary clause.

Under the facts of this case, requiring a causal connection between the cause of the accident and the unambiguous exclusionary clause would "constitute [ ] an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Zuckerman, supra,* 100 *N.J.* at 324, 495 *A*.2d 395; *see also Travelers' Protective Ass'n of Am. v. Prinsen,* 291 *U.S.* 576, 582, 54 *S.Ct.* 502, 504, 78 *L.Ed.* 999, 1003 (1934) (stating that "[c]ourts of high authority have held that in policies that exclude certain activities there is no need of any causal nexus between the injury or death and the forbidden forms of conduct. While the proscribed activity continues, the insurance is suspended as if it had never been in force."). In other words, the "Approved Pilot Endorsement" and the unambiguous exclusionary clause "directly affect the risk the insurer assumes and upon which premiums are established." *Aviation Charters, supra,* 335 *N.J.Super.* at 596, 763 *A*.2d 312.

Furthermore, *Cooper* did not involve an exclusionary clause; it concerned a timeliness of notice of claim issue. *Cooper, supra,* 51 *N.J.* at 91, 237 *A*.2d 870. Unlike the notice of claim issue presented in *Cooper* that was intended "to aid the insurance carrier in investigating, settling, and defending claims," *Zuckerman, supra,* 100 *N.J.* at 323, 495 *A*.2d 395, the unambiguous exclusionary clause and the "Approved Pilot Endorsement" involved in this appeal "define the coverage provided." *Ibid.* Thus, our holding in *Zuckerman* recognized that *Cooper* dealt with non-coverage provisions. *Id.* at 324, 495 *A*.2d 395.

We need not, and do not, decide whether on other facts a lack of causality would result in coverage. Although the cause of the accident in this case had nothing to do with the pilot having fewer than the required 5,000 hours, the pilot's experience was highly significant to the risk undertaken by the insurer, a fact that was

known to the insured. Given the undisputed facts, it cannot be said that the policy is a contract of adhesion especially because the higher risk coverage was available at a higher price. We do, however, note that our opinion today is not inconsistent with the general rule for life insurance policies, which states that "in the absence of a statute establishing a different rule, there need be no causal connection between the cause of death and the misrepresentation [or the exclusion]." *Massachusetts Mut. Life Ins. Co. v. Manzo, supra,* 122 *N.J.* at 118, 584 *A.*2d 190 (quoting 7 Couch, Insurance 2d §§ 37:87 at 102 and 37:110 at 632 (1965)). Nonetheless, we leave for another day, the decision whether, in another factual context, it would be appropriate to require a causal nexus before denying coverage based on a clear and unambiguous exclusionary provision.

The judgment of the Appellate Division, as modified, is affirmed.

*For affirmance as modified*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.