997 A.2d 991

WENDY M. FLOMERFELT, PLAINTIFF, v. MATTHEW P. CARDIELLO, GARY P. CARDIELLO, AND JANET CARDIELLO, DEFENDANTS.

MATTHEW P. CARDIELLO, PLAINTIFF–APPELLANT, v. PENN-SYLVANIA GENERAL INSURANCE COMPANY, DEFENDANT–RESPONDENT, AND NEW JERSEY SKYLANDS INSURANCE COMPANIES, GARY P. CARDIELLO, AND JANET CARDIELLO, DEFENDANTS.

Argued November 9, 2009—Decided July 7, 2010.

Lavecchia, J., concurred in judgment and filed opinion in which Rivera-Soto, J., joined.

*Anthony V. D'Elia* argued the cause for appellant (*Chasan Leyner & Lamparello*, attorneys).

*Vincent E. Reilly* argued the cause for respondent (*Coughlin Duffy*, attorneys).

Justice HOENS delivered the opinion of the Court.

Plaintiff Wendy Flomerfelt sustained temporary and permanent injuries after she overdosed on alcohol and drugs during a party hosted by defendant Matthew Cardiello at his parents' home while they were out of town. Plaintiff has little recollection of what she drank or ingested either before she arrived or during the party itself. Her complaint, however, asserted that her injuries were caused by defendant, who provided her with drugs and alcohol, served her alcohol when she was visibly intoxicated, and failed to promptly summon the rescue squad when she was found, unconscious, on the porch the next day.

Defendant turned to Pennsylvania General Insurance Company, his parents' homeowners' insurer, tendering to it the defense of Flomerfelt's complaint and seeking indemnification under the terms of the policy. Pennsylvania General, in response, declined either to provide a defense against the claim or to indemnify him, pointing to the language of its policy that excluded claims "[a]rising out of the use, ... transfer or possession" of controlled dangerous substances.

The parties dispute the meaning of that language and the scope of the exclusion as it bears on both the insurer's duty to defend and its obligation to indemnify. Accordingly, this appeal requires us to consider the insurer's duties to defend and indemnify when the precise manner in which the injury was caused is in dispute and when the parties disagree about the role that controlled

dangerous substances, for which the policy excludes coverage, played in bringing about plaintiff's injury.

## I.

Plaintiff was a guest at a Saturday evening party hosted by defendant Matthew Cardiello while his parents,[1] the owners of the home, were out of town. At the time, Flomerfelt was twenty-one years old. Cardiello, who was only twenty years old, admitted that he provided his guests with beer, that he was aware that a variety of drugs were being used at the event, and that during the party he saw Flomerfelt ingest cocaine. Although he denied providing plaintiff with drugs, he admitted that he took "Ultracet," a prescription medication, and that empty individual-dose packets of that drug were found in the household trash after the party.

Flomerfelt has little recollection of the party. She concedes that prior to arriving at defendant's home she may have smoked marijuana, but cannot recall what else she might have ingested either before or during the party. In her complaint, however, plaintiff alleged that defendant provided her with alcohol and drugs, including the prescription drug "Ultracet,"[2] which contains opiates. Each of those allegations is connected to a toxicology report that identified traces of numerous substances in her urine.

Late Saturday evening or early Sunday morning, Flomerfelt became ill and unresponsive, although precisely when that occurred is unclear from the record. Defendant denies that he was aware of Flomerfelt's plight prior to Sunday afternoon when he

---

[1] Defendant's parents, Gary and Janet Cardiello, were named as defendants in plaintiff's complaint. Because none of the issues raised in this appeal relate to the counts in the complaint that implicate them, we refer only to Matthew as the defendant.

[2] During her deposition, plaintiff had no recollection of ingesting the drug; the assertion in her complaint is based on the toxicology report and defendant's concession that led to the discovery of the empty pill containers in the household trash.

finally awoke for the day. According to several of the partygoers, it was not until then that defendant and others found plaintiff on the porch and were unable to rouse her. Defendant admits that he first tried to have plaintiff's sister come to the house and transport her to the hospital. Only after that effort failed did he summon rescue personnel, who took her to the emergency room. Plaintiff contends that defendant delayed calling for help because he was afraid that the police would discover the illegal drugs in the house and because he did not want his parents to learn about the party he had hosted in their absence.

Plaintiff was treated in the Emergency Room and in the Intensive Care Unit for kidney and liver failure. A toxicology report identified alcohol, marijuana, opiates and cocaine in plaintiff's system and her hospital discharge summary included an initial diagnosis of numerous conditions "probably secondary to drug overdose." When plaintiff was released from the hospital, she had recovered from the effects of the acute liver and kidney conditions but she contends that she suffers from permanent partial hearing loss.

During discovery, two experts provided opinions concerning the cause of plaintiff's injuries, both temporary and permanent. Plaintiff's expert, Dr. Michael Buccigrossi, concluded that her injuries were caused by the ingestion of multiple drugs and alcohol, and that the injuries were exacerbated by a delay in receiving medical attention. He did not attempt to quantify the amounts of each of the substances found in her system or to determine when each substance may have been ingested. Rather, he based his conclusions on reports identifying each of the substances, that is drugs or alcohol ingestion alone, as the potential causative agent for each of plaintiff's injuries.

Defendant offered the expert opinion of Dr. James Cinberg, who concluded that "[t]he toxins found in Wendy Flomerfelt's urine have been associated with rapid and irreversible high frequency loss of hearing and with tinnitus." Dr. Cinberg suggested that plaintiff's injuries might have resulted from prior drug abuse,

pointing to a reported case history in which hearing loss was linked to regular marijuana use and other drug ingestion that preceded an overdose. He also noted the possibility that Flomerfelt had a genetic predisposition to hearing loss that contributed to her injury. Finally, Dr. Cinberg rejected plaintiff's assertion that defendant's delay in summoning aid had caused or contributed to her injuries. He opined that "[t]reatment that might have been instituted hours earlier would not be expected to have improved her current status."

## II.

Following the service of plaintiff's complaint, defendant tendered the defense and sought indemnification for plaintiff's claims to Pennsylvania General, his parents' homeowners' insurer. Pennsylvania General declined to defend or indemnify, pointing to the exclusion in the policy for claims "[a]rising out of the use, . . . transfer or possession" of controlled dangerous substances. In April 2007, defendant filed a declaratory judgment action, seeking a declaration that Pennsylvania General was obligated both to defend and to indemnify him. That complaint was consolidated with plaintiff's pending personal injury action for discovery and trial.

Early in 2008, Pennsylvania General and defendant cross-moved for summary judgment on the issues raised in the declaratory judgment aspect of the litigation. The insurer argued that the "arising out of" language is unrelated to causation, but instead equates with concepts such as "incident to" or "in connection with." Asserting that all of the evidence ties plaintiff's injuries at least in part to her ingestion of illegal drugs at the party, the insurer argued that it had neither a duty to defend nor a duty to indemnify.

Defendant opposed that motion, arguing that the "arising out of" language is ambiguous. He asserted that because the complaint also alleged that the injuries were caused by alcohol or by the failure to promptly summon assistance, judgment could not be

entered in favor of the insurer. Based upon the ambiguity in the phrase, defendant argued that the insurer was obligated to provide him with a defense unless and until it could be proven that alcohol was neither the sole nor a contributing cause and, depending on the outcome of the trial of plaintiff's complaint, that it was obligated to indemnify him as well.

The trial court denied the insurer's motion and granted defendant's, directing Pennsylvania General to provide both a defense and indemnity pursuant to the policy. In a brief statement of reasons, the court explained that the insurer has the burden of proving that the exclusion applies and that in the context of a summary judgment motion, defendant was entitled to the benefit of factual inferences in his favor. The court then commented that the insurer could not rely on the exclusion because the experts were not able to specifically attribute plaintiff's injuries to either the drugs or the alcohol. The court reasoned that although plaintiff's complaint referred to both drugs and alcohol, defendant was entitled to the benefit of an inference that the injuries were caused by a covered, as opposed to an excluded, risk. The court therefore concluded that the insurer was required to defend and indemnify defendant.

The Appellate Division, in an interlocutory appeal, reversed the trial court's denial of Pennsylvania General's motion and its grant of relief in favor of defendant. In doing so, the panel employed a broad interpretation of the phrase "arising out of" as it was used in the policy's exclusion and utilized a substantial nexus test for purposes of evaluating the indemnification question. Following that logic, the panel concluded that because the expert proofs linked plaintiff's injuries to both drugs and alcohol, those injuries "arose out of" the excluded acts of "use, . . . transfer or possession" of illegal drugs. The panel did not engage in a separate analysis of the duty to defend, because it concluded that the exclusion barred coverage under any circumstances. The panel therefore directed that judgment be entered in favor of Pennsylvania General.

We granted defendant's motion for leave to appeal, 200 *N.J.* 203, 976 *A.*2d 381 (2009), and we reverse.

## III.

We begin by reciting briefly some familiar principles that bear upon the question before this Court. An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled. *Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960); *Scarfi v. Aetna Cas. & Sur. Co.*, 233 *N.J.Super.* 509, 514, 559 *A.*2d 459 (App.Div.1989). In considering the meaning of an insurance policy, we interpret the language "according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992) (citing *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990)).

If the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations. *Doto v. Russo*, 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995); *Voorhees, supra*, 128 *N.J.* at 175, 607 *A.*2d 1255. This is so even if a "close reading" might yield a different outcome, *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001), or if a "painstaking" analysis would have alerted the insured that there would be no coverage, *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 338–39, 495 *A.*2d 406 (1985) (citation omitted). Even so, when considering ambiguities and construing a policy, courts cannot "write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989); *see Kampf, supra*, 33 *N.J.* at 43, 161 *A.*2d 717.

Exclusionary clauses are presumptively valid and are enforced if they are "specific, plain, clear, prominent, and not contrary to public policy." *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997) (quoting *Doto, supra*, 140 *N.J.* at

559, 659 *A.*2d 1371); *see Zacarias, supra,* 168 *N.J.* at 601–02, 775 *A.*2d 1262 (holding that intra-family exclusion in boatowners' policy precluded coverage); *Boddy v. Cigna Prop. & Cas. Cos.,* 334 *N.J.Super.* 649, 659–60, 760 *A.*2d 823 (App.Div.2000) (enforcing homeowners' policy exclusion for "motorized land vehicles"). If the words used in an exclusionary clause are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability." *Longobardi, supra,* 121 *N.J.* at 537, 582 *A.*2d 1257; *see Cobra Prods., Inc. v. Fed. Ins. Co.,* 317 *N.J.Super.* 392, 400–01, 722 *A.*2d 545 (App.Div.1998), *certif. denied,* 160 *N.J.* 89, 733 *A.*2d 494 (1999).

We have observed that "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. L–C–A Sales Co.,* 155 *N.J.* 29, 41, 713 *A.*2d 1007 (1998) (quoting *Chunmuang, supra,* 151 *N.J.* at 95, 698 *A.*2d 9). As a result, exclusions are ordinarily strictly construed against the insurer, *Aetna Ins. Co. v. Weiss,* 174 *N.J.Super.* 292, 296, 416 *A.*2d 426 (App.Div.), *certif. denied,* 85 *N.J.* 127, 425 *A.*2d 284 (1980), and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it, *Cobra Prods., supra,* 317 *N.J.Super.* at 401, 722 *A.*2d 545.

Nonetheless, courts must be careful not to disregard the "clear import and intent" of a policy's exclusion, *Westchester Fire Ins. Co. v. Cont'l Ins. Cos.,* 126 *N.J.Super.* 29, 41, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 *A.*2d 732 (1974), and we do not suggest that "any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage," *Stafford v. T.H.E. Ins. Co.,* 309 *N.J.Super.* 97, 105, 706 *A.*2d 785 (App.Div.1998). Rather, courts must evaluate whether, utilizing a "fair interpretation" of the language, it is ambiguous. *Ibid.*

If the language of an exclusion requires a causal link, courts must consider its nature and extent because evaluating that

link will determine the meaning and application of the exclusion. *See, e.g., Kievit v. Loyal Protective Life Ins. Co.,* 34 *N.J.* 475, 170 *A.*2d 22 (1961) (considering exclusion in accident insurance policy for losses "resulting from or contributed to by any disease or ailment"); *cf. Mahon v. Am. Cas. Co.,* 65 *N.J.Super.* 148, 167 *A.*2d 191 (App.Div.) (considering applicability of policy that insured against accidental injury resulting "directly and independently" of all other causes to plaintiff with pre-existing abnormality), *certif. denied,* 34 *N.J.* 472, 169 *A.*2d 746 (1961).

On the other hand, if the exclusion uses terms that make it plain that coverage is unrelated to any causal link, it will be applied as written. Thus, an exclusion for damage to an aircraft while it was being "operated in flight by a pilot who is not approved" barred coverage for damage sustained while an unapproved pilot was in control, even though the damage itself was caused by a mechanical failure and through no fault of the pilot. *See Aviation Charters, Inc. v. Avemco Ins. Co.,* 335 *N.J.Super.* 591, 593, 763 *A.*2d 312 (App.Div.2000), *aff'd,* 170 *N.J.* 76, 784 *A.*2d 712 (2001). The exclusion applied because, by definition, it included no causal element. *Id.* at 600–01, 763 *A.*2d 312.

In similar circumstances, courts have not read a causal nexus into the otherwise plain terms. *See, e.g., Rutgers Cas. Ins. Co. v. Collins,* 158 *N.J.* 542, 730 *A.*2d 833 (1999) (considering automobile policy exclusion for non-permitted drivers); *Ryan v. LCS, Inc.,* 311 *N.J.Super.* 618, 710 *A.*2d 1050 (App.Div.1998), *aff'd o.b.,* 157 *N.J.* 251, 723 *A.*2d 975 (1999) (same); *Campbell v. Lion Ins. Co.,* 311 *N.J.Super.* 498, 710 *A.*2d 576 (App.Div.1998) (enforcing exclusion from uninsured or underinsured motorist coverage for vehicle used to carry property for fee); *Saliba v. Am. Policyholders Ins. Co.,* 158 *N.J.Super.* 48, 385 *A.*2d 328 (Law Div.1976) (applying exclusion in aircraft policy for rentals), *aff'd o.b.,* 157 *N.J.Super.* 476, 385 *A.*2d 239 (App.Div.), *certif. denied,* 76 *N.J.* 242, 386 *A.*2d 867 (1978).

## A.

In addition to those basic tenets of construction, this matter requires an evaluation of the principles governing the insurer's duties to defend and to indemnify. Those duties are neither identical nor coextensive, and therefore must be analyzed separately. Although a definitive conclusion that a policy by its terms affords no coverage, and therefore that there is no duty of indemnification, also means that there is no duty to defend, coverage questions may not have clear answers in advance of discovery or trial. As a result, courts are often required to evaluate whether the insurer owes its insured a duty to defend in advance of a conclusive decision about coverage. In those circumstances, the separate principles that govern the duty to defend must be considered and applied.

An insurer's duty to defend an action brought against its insured depends upon a comparison between the allegations set forth in the complainant's pleading and the language of the insurance policy. *Voorhees, supra,* 128 *N.J.* at 173, 607 *A.*2d 1255; *Ohio Cas. Ins. Co. v. Flanagin,* 44 *N.J.* 504, 512, 210 *A.*2d 221 (1965); *L.C.S., Inc. v. Lexington Ins. Co.,* 371 *N.J.Super.* 482, 490, 853 *A.*2d 974 (App.Div.2004). In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation. *Flanagin, supra,* 44 *N.J.* at 512, 210 *A.*2d 221.

In evaluating the complaint for this purpose, doubts are resolved in favor of the insured and, therefore, in favor of reading claims that are ambiguously pleaded, but potentially covered, in a manner that obligates the insurer to provide a defense. *Cent. Nat'l Ins. Co. v. Utica Nat'l Ins. Group,* 232 *N.J.Super.* 467, 470, 557 *A.*2d 693 (App.Div.1989). Similarly, if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved.

*Voorhees, supra,* 128 *N.J.* at 174, 607 *A.2d* 1255 (citing *Mt. Hope Inn v. Travelers Indem. Co.,* 157 *N.J.Super.* 431, 440–41, 384 *A.2d* 1159 (Law Div.1978)).

A vivid and useful depiction of the method to be utilized in evaluating an insurer's duty to defend is found in our Appellate Division's direction that "the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." *Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.2d* 198 (App.Div.1953), *aff'd o.b.,* 15 *N.J.* 573, 105 *A.2d* 677 (1954). The image of laying the complaint and the policy side-by-side for a comparison remains both an apt and vibrant description today.

The analysis of the duty to defend is more complex if there are multiple theories of recovery or claims, some of which would be or arguably would be covered and others of which certainly would not. This Court first addressed this question in the context of a post-verdict dispute over coverage for defense costs and indemnification after a jury returned a verdict adverse to the insured that did not identify whether it was based on a covered or an excluded theory of liability. *See Burd v. Sussex Mut. Ins. Co.,* 56 *N.J.* 383, 267 *A.2d* 7 (1970). In *Burd,* the insured was sued for injuries sustained in a shooting incident by a plaintiff who asserted, in separate counts of the complaint, both intentional and negligent acts of the insured. *Id.* at 386–87, 267 *A.2d* 7. Because only the latter claim would have been covered, the insurer declined to defend or indemnify. *Id.* at 387, 267 *A.2d* 7. Following the verdict against the insured that did not reveal which theory the jury had found was proven, the insured sought to recover its defense costs and the full amount of the verdict from the insurer. *Ibid.*

Interpreting how the duty to defend is analyzed when there are questions about coverage, Chief Justice Weintraub, writing for the Court, first recognized that although the duty to defend arises

because of an underlying obligation to pay the claim, the insurer may not refuse to provide a defense merely because it believes the claim is weak or not likely to succeed. *Id.* at 389, 267 *A.*2d 7. However, the Court recognized that if there are multiple theories of liability, only some of which would be covered, the interests of the insured and insurer may not coincide. *Id.* at 389–90, 267 *A.*2d 7. In an effort to fashion a practical remedy, and aware of the implications that arise because of the insurer's divided loyalties, the Court concluded that the insurer had two options. That is, the insurer could assume the defense if the insured agreed, with a reservation of its right to dispute coverage, or it could refuse to defend and dispute its obligations thereafter, so as to "translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay." *Id.* at 390, 267 *A.*2d 7.

This Court subsequently read *Burd* to mean that if a factual dispute central to deciding whether a policy provides coverage cannot be decided absent a trial, "an insured must initially assume the costs of defense ... subject to reimbursement by the insurer if [the insured] prevails on the coverage question." *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.,* 98 *N.J.* 18, 24 n. 3, 483 *A.*2d 402 (1984); *see also Rutgers v. Liberty Mut. Ins. Co.,* 277 *N.J.Super.* 571, 577–81, 649 *A.*2d 1362 (App.Div.1994). That does not mean, however, that factual disputes will always require the insured to assume the defense initially; on the contrary, in *Burd* itself the Court recognized that it might be appropriate to decide the coverage question, and thus the insurer's duty to defend, before trial of the underlying claim. In Chief Justice Weintraub's words:

> Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.

[*Burd, supra,* 56 *N.J.* at 391, 267 *A.2d* 7].

In short, in circumstances in which the underlying coverage question cannot be decided from the face of the complaint, the insurer is obligated to provide a defense until all potentially covered claims are resolved, but the resolution may be through adjudication of the complaint or in a separate proceeding between insured and insurer either before or after that decision is reached.

## B.

Complaints resting on multiple claimed causes present additional challenges for courts considering an insurer's duty to defend or indemnify.  New Jersey courts have generally considered questions about how to evaluate multiple or concurrent causes of damages only in the context of first-party claims against insurers for coverage.  Because the nature of first-party coverage and the applicable policy provisions are different from the "arising out of" language that is central to this appeal, those decisions are of limited relevance.

The first-party coverage decisions do, however, yield two generally applicable rules.  In situations in which multiple events, one of which is covered, occur sequentially in a chain of causation to produce a loss, we have adopted the approach known as "Appleman's rule," pursuant to which the loss is covered if a covered cause starts or ends the sequence of events leading to the loss. *See, e.g., Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.,* 181 *N.J.* 245, 257, 854 *A.2d* 378 (2004) (quoting 5 Appleman, *Insurance Law & Practice* § 3083 at 309–11 (1970)); *Stone v. Royal Ins. Co.,* 211 *N.J.Super.* 246, 252, 511 *A.2d* 717 (App.Div. 1986) (applying Appleman's rule;  coverage attaches because final step in causative chain is covered); *Franklin Packaging Co. v. Cal. Union Ins. Co.,* 171 *N.J.Super.* 188, 191, 408 *A.2d* 448 (App.Div.1979) (applying Appleman's rule;  coverage attaches because first event in causative chain is covered), *certif. denied,* 84 *N.J.* 434, 420 *A.2d* 340 (1980).  On the other hand, if the claimed causes, one covered and one not, combine to produce an indivisible

loss, our appellate courts have rejected claims for coverage largely because of the allocation of the burden of proof on the insured to demonstrate a covered cause for a loss. *See, e.g., Newman v. Great Am. Ins. Co.*, 86 *N.J.Super.* 391, 403–04, 207 *A.2d* 167 (App.Div.1965) (requiring insured to demonstrate that excluded cause was neither sole nor substantial cause of loss where damage resulted from combination of covered and excluded causes); *Brindley v. Firemen's Ins. Co.*, 35 *N.J.Super.* 1, 6, 113 *A.2d* 53 (App.Div.1955) (concluding that because wind and rain were concurrent causes, only one of which was covered, insured could not demonstrate "without resort to sheer conjecture the amount of the particular loss ascribable to the hazard assumed by the carrier").

This Court has only once addressed a concurrent cause question in the third-party insurance context, and only as it concerned the insurer's duty to defend. *See Salem Group v. Oliver*, 128 *N.J.* 1, 607 *A.2d* 138 (1992). In *Salem Group*, the Court affirmed, per curiam, the Appellate Division's decision that an insurer had a duty to defend its insured, substantially for the reasons expressed in Judge King's opinion. *Id.* at 3, 607 *A.2d* 138. In that matter, the Court concluded that the insurer was obligated to defend the homeowner who had served alcohol to his underage nephew who then drove an all-terrain vehicle (ATV) and had an off-premises accident. *Ibid.* Even though the policy excluded a loss "arising out of" the use of the insured's motor vehicle, this Court noted that "insurers are generally obligated to defend their insureds on social host claims" and held that the insurer "may not avoid that obligation simply because the operation of the ATV constitutes an additional cause of the injury." *Ibid.* (citing *Coop. Fire Ins. Co. v. Vondrak*, 74 *Misc.*2d 916, 346 *N.Y.S.*2d 965, 968 (N.Y.Sup.Ct. 1973)).

For purposes of the duty to defend, this Court highlighted evidence that the nephew's consumption of alcohol, a covered event, was a causal factor in the accident because the nephew had driven "harder, faster and recklessly" as a result of it. *Id.* at 6, 607 *A.2d* 138 (citing *Salem Group v. Oliver*, 248 *N.J.Super.* 265,

267, 590 *A.*2d 1194 (App.Div.1991)). The Court commented that the policy's silence about concurrent causation made the exclusion ambiguous, and concluded that allowing the insurer to refuse to defend "could defeat the reasonable expectations of the insured, which should be respected to the extent the policy's language allows." *Id.* at 4, 607 *A.*2d 138.

In reaching its conclusion, this Court did not embrace a broad test for defense or indemnity. Rather, the Court reasoned that the duty to defend turned on whether the insured could be found liable based on a theory completely independent of the excluded cause, such as social host liability, rather than one that was intertwined with the excluded cause, such as negligent supervision. That is, if the claim could be based on social host liability, a covered event, rather than solely based on the insured's failure to exercise sufficient control and supervision over a child in the operation of a motor vehicle, an excluded event, the insurer would be obligated to defend it. *Id.* at 5, 607 *A.*2d 138. In the latter circumstance, we concluded that the exclusion would bar coverage because

> [t]he negligent entrustment or supervision cannot be isolated from the ownership and operation of the insured automobile. In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another. One need not own a motor vehicle to serve alcohol to another.
>
> [*Ibid.*]

The per curiam affirmance sparked a dissent, however, in which two members of this Court took exception with the majority for relying on a theory espoused by a "roundly-criticized" California decision. *Id.* at 6–7, 607 *A.*2d 138 (Clifford, J., dissenting). The California precedent in question adopted a rule, in the third-party coverage context, that required the insurer to defend and indemnify for "concurrent proximate causes ... so long as one of the causes is covered by the policy." *See State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 *Cal.*3d 94, 109 *Cal.Rptr.* 811, 514 *P.*2d 123, 129

(1973).[3]  Whether *Salem Group* represents a true case of concurrent causation, as opposed to a fact pattern that also could be analyzed in terms of sequential causes, we have not since departed from its holding concerning the insurer's duty to defend in such circumstances.

In the year following *Salem Group* the Appellate Division addressed the question of multiple claimed causes of a loss in the context of a third-party claim, when considering a dispute between two insurers concerning which, if either, owed the insured a defense or indemnity. *See Search EDP, Inc. v. Am. Home Assurance Co.*, 267 *N.J.Super.* 537, 543–44, 632 *A.*2d 286 (App.Div. 1993), *certif. denied*, 135 *N.J.* 466, 640 *A.*2d 848 (1994).  There, the insured was an employee search firm that sought defense and indemnity from both its General Liability and its Errors and Omissions (E & O) carriers when sued for injuries caused by an employee it had supplied to a client. *Id.* at 540–41, 632 *A.*2d 286. In analyzing the duties of the two insurers, the court first concluded that because the claim was based on the insured's failure to conduct a background check, it sounded in professional negligence, with the result that only the E & O carrier had any obligation to the insured. *Id.* at 543–44, 632 *A.*2d 286.

In considering whether the policy's exclusion for bodily injury applied, the court referred to the *Salem Group* decision only for its explanation about basic tenets of insurance policy construction rather than for its concurrent cause analysis. *Id.* at 542, 632 *A.*2d 286.  Instead, the appellate court used the approach embodied in Appleman's rule and endorsed in *Franklin Packaging*, concluding that the proper focus was not on the claimed harm to the insured's client, but on the claimed cause that set in motion the chain of events resulting in that harm. *Id.* at 543–44, 632 *A.*2d 286.  The

---

[3] Although recently, the California court has offered further explanations of its rule, adopting a burden-shifting approach to determine coverage in cases of concurrent causation, *see State v. Allstate Ins. Co.*, 45 *Cal.*4th 1008, 90 *Cal. Rptr.*3d 1, 201 *P.*3d 1147, 1167 (2009); we need not consider its effect on the rule announced in *Salem Group*.

court reasoned that the insured's professional negligence in failing to conduct a background check was the proximate cause for the purposes of determining coverage, with the result that the E & O insurer owed the insured both defense and indemnity, in spite of the exclusion for bodily injury claims. *Id.* at 543–45, 632 *A.*2d 286.

## C.

As with all disputes about an insurer's duty to defend or indemnify, this appeal turns on the particular language of the policy that defines the coverage and the exclusion. Those provisions are:

**Coverage E—Personal Liability**

If a claim or suit is brought against an insured for damages because of **bodily injury** or **property damage** caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable. . . .

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

. . . .

**Coverage E—Personal Liability** . . . **[does] not apply to bodily injury or property damage:**

. . . .

m. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). . . . Controlled Substances include, but are not limited to, cocaine, LSD, marijuana and all narcotic drugs.[4]

The critical language in the exclusion as it relates to both the duty of defense and indemnity is the phrase "arising out of," a phrase this Court has considered in the context of a Comprehensive General Liability policy that excluded claims "arising out of and in the course of employment." *Am. Motorists, supra,* 155 *N.J.* at 34, 713 *A.*2d 1007. In concluding that the insured's claim for defense and indemnity against its employee's wrongful termi-

---

[4] There are two exceptions to the exclusion that would afford coverage if a drug was prescribed or if the insured had no knowledge that illegal drugs were involved in the event that gives rise to the claim. Neither applies to the claims against defendant Matthew Cardiello.

nation claim was within the exclusion, this Court commented on the different tests that could be applied to interpret the "arising out of" language. After canvassing appellate court decisions that had analyzed the phrase, this Court noted that it has been read expansively to define the link between the conduct and the covered activity as " 'originating from,' 'growing out of' or having a 'substantial nexus.' " *Id.* at 35, 713 *A.*2d 1007 (quoting *Records v. Aetna Life & Cas. Ins.,* 294 *N.J.Super.* 463, 468, 683 *A.*2d 834 (App.Div.1996) (quoting *Westchester Fire, supra,* 126 *N.J.Super.* at 38, 312 *A.*2d 664), *certif. denied,* 151 *N.J.* 463, 700 *A.*2d 876 (1997)). This Court also noted, without commenting, that our Appellate Division had referred to a broad definition for the phrase when used in an exclusion. *Id.* at 35–36, 713 *A.*2d 1007 (citing *Allstate Ins. Co. v. Moraca,* 244 *N.J.Super.* 5, 13 n. 1, 581 *A.*2d 510 (App.Div.1990)). Regardless of the precise definition, this Court referred to the "arising out of" language as "clear and unambiguous," an obvious reference to the fact that a claim for wrongful termination of employment must inevitably have "aris[en] out of and in the course of employment." *Id.* at 41, 713 *A.*2d 1007.

In some cases, an exclusion itself may add other language to the phrase "arising out of" that will assist in the analysis. That is, the phrase is not always used alone, but may be accompanied by qualifying phrases that impact upon its interpretation. For example, in the pollution exclusion context, the phrase has appeared as part of a clause that excludes claims that are "based on, arising out of, or in any way involving" polluting discharges or similar events. *Sealed Air Corp. v. Royal Indem. Co.,* 404 *N.J.Super.* 363, 372, 961 *A.*2d 1195 (App.Div.) (quoting policy language), *certif. denied,* 196 *N.J.* 601, 960 *A.*2d 396 (2008). In interpreting such language, courts separately consider the meaning of each phrase and then collectively analyze the intent of the exclusion to decide whether the complaint falls within its scope. Therefore, in *Sealed Air,* notwithstanding the internal ambiguities in the language and the presence of phrases in the clause that were "facially extremely inclusive," it required a nexus to pollution. *Id.* at 379–81, 961 *A.*2d

1195. Because the complaint sounded in securities fraud rather than pollution, it was not excluded. *Ibid.*

Only one published decision has addressed the phrase "arising out of the use, ... transfer or possession" of illegal drugs as used in an exclusion in a homeowners' policy. *See Prudential Prop. & Cas. Ins. Co. v. Brenner,* 350 *N.J.Super.* 316, 795 *A.*2d 286 (App.Div.2002). In that matter, the trial court had used a substantial nexus analysis to conclude that a complaint against the insured's son for the shooting death of plaintiff's decedent sustained in a drug deal was excluded from coverage. *Id.* at 318–19, 795 *A.*2d 286 (reciting factual allegations; quoting reasoning of trial judge).

The factual setting in which the injury occurred was central to the appellate court's decision to affirm. In short, the insured's son, along with others, went to the decedent's residence to get marijuana. *Id.* at 319, 795 *A.*2d 286. He hoped that he and his friends could persuade the decedent to "loan" it to them based on prior transactions, but he was aware that the others were prepared to steal it if need be and that they were armed. *Id.* at 319– 20, 795 *A.*2d 286. As Judge Cuff, writing for the Appellate Division, concluded, the nexus between the claim and the excluded act was plain, because the focus of the events that led to the shooting was the use and possession of illegal drugs. As Judge Cuff explained, "[i]t is this activity which the exclusion clearly and expressly addresses. In the face of clear and unambiguous language and undisputed conduct encompassed by the policy language, we decline to engage in a strained construction to impose coverage." *Id.* at 322, 795 *A.*2d 286. Quoting this Court's analysis of the "arising out of" phrase in *American Motorists, supra,* 155 *N.J.* at 35–36, 713 *A.*2d 1007, Judge Cuff concluded that there was a "clear nexus between the fatal shooting ... and [the insured's] attempt to obtain illegal drugs" that fit this Court's interpretation of the exclusionary clause. *Brenner, supra,* 350 *N.J.Super.* at 323, 795 *A.*2d 286.

## IV.

Although in *American Motorists* we referred to the "arising out of" language of the exclusion as clear and unambiguous, the circumstances presented in this appeal reveal an inherent and heretofore unseen ambiguity that requires us to consider the phrase in a new and different context. At a minimum, the facts before us demonstrate the complexity of interpreting the exclusion when a claim for a personal injury asserts multiple possible causes and theories for recovery against the insured. Plaintiff's complaint asserted that she was entitled to recover from defendant because her injuries were caused by drugs, by alcohol, by a combination of drugs and alcohol, by serving alcohol to her when she was visibly intoxicated, or by the negligent failure to summon aid promptly. On the face of the complaint, only some of those theories would support defendant's demand that his homeowners' insurer defend and indemnify him. That is, some claims made against defendant potentially would be covered but others would not.

We begin with the principles we announced in *American Motorists*, where we interpreted the "arising out of" language to mean " 'originating from,' 'growing out of' or having a 'substantial nexus,' " *supra,* 155 *N.J.* at 35, 713 *A.*2d 1007. Each of those potential definitions includes a causal link between the excluded act and the injury, but none requires that the excluded act be the proximate cause of the injury. Indeed, we specifically commented that other courts had interpreted the phrase to imply a connection weaker than proximate cause. *See id.* at 39, 713 *A.*2d 1007 (citing *Meadowbrook v. Tower Ins. Co.,* 559 *N.W.*2d 411, 419 (Minn. 1997)); *see also Westchester Fire, supra,* 126 *N.J.Super.* at 37, 312 *A.*2d 664 (explaining that policy covering injury "arising out of" automobile use "does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation").

Even so, the three definitions are not identical, because two of them could be read to apply where multiple potential causes are

sequential and severable, with the third having a broader preclusive scope. That is, the definitions that exclude injuries that "originate from" or "grow out of" drug use at the party suggest both a close causal connection and a temporal relationship in which the injury is part of a chain of events that began with the use of a drug at the party. That reading would mean that neither an injury that occurred as a result of multiple or concurrent causes, nor an injury that resulted because drugs were used before the party, nor an injury that began with alcohol ingestion would be excluded.

However, "having a 'substantial nexus,'" the other definition of the phrase we used in *American Motorists, supra,* 155 *N.J.* at 35, 713 *A*.2d 1007, is broader. It could operate to exclude coverage if drug use was part of interrelated or concurrent causes. That is, if the evidence demonstrates, or if there is a finding of fact, that the excluded act, here the use of drugs, has a substantial nexus to the temporary or permanent injury, then there will be no coverage for that injury, even if there are other contributing causes. On the other hand, if the finder of fact were to conclude that plaintiff's use of drugs before she arrived at the party or a prior history of drug use caused her injury, and that her use of drugs at the party did not also have a substantial nexus to the injury, then the exclusion would not apply. Similarly, if the finder of fact were to conclude that the use of alcohol was the cause of the injury and that there was no substantial nexus between her use of drugs at the party and her injury, the exclusion would not bar coverage of the claim.

Regardless of which definition for the phrase we utilize, the exclusion, for example, would not bar a claim by another guest at the same party who had neither participated in nor been aware of the drug use and who fell off the deck and was injured. Likewise, if a partygoer suffered injuries that were solely alcohol-induced, the exclusion would not bar that person's claim even if others at the party were using drugs. In neither situation would there be a substantial nexus between drugs and the injury, with the result that the exclusion would not apply.

Our well-established principles require that the insurer bear the burden of demonstrating that the exclusion applies, and that the duty to defend continues as long as there is a potentially covered claim.  More to the point, in light of the principles we announced in *American Motorists*, the insurer's decision to use the phrase "arising out of" with no further qualification imposes upon it the meaning we ascribed when explaining our understanding of that phrase. At a minimum, as we observed in *Salem Group*, the insurer's use of the phrase with no clarification of its intended meaning in circumstances arising from potentially concurrent causes makes the phrase ambiguous, calling for an interpretation consistent with the reasonable expectations of the insured.  *See Salem Group, supra*, 128 *N.J.* at 4, 607 *A.2d* 138.

Applying those meanings and those precedents, the insurer's proposed construction that we read the phrase in the exclusion to mean "incident to" or "in connection with" cannot be correct. That reading would expand the phrase "arising out of" to mean that the injury is connected in any fashion, however remote or tangential, to the excluded act, rather than one that "originates in," "grows out of" or has a "substantial nexus" to the excluded act.  It is a suggested reading so at odds with our case law that we decline to embrace it.

We turn then to our consideration of the insurer's duties to defend and indemnify in light of plaintiff's claims and the policy's language.  Confounding our analysis in this case is the state of the record relating to the experts and their opinions.  The toxicology report merely identified substances, both drugs and alcohol, that were found in plaintiff's system.  Plaintiff's expert Buccigrossi conceded that there is insufficient evidence on which to base an opinion about which substance was ingested when and with what effect on plaintiff's temporary and permanent injuries. His opinion referred to literature that would permit a finder of fact to attribute each of the injuries to drugs, or to alcohol, or to a combination of substances plaintiff ingested.  Defendant's expert

Cinberg did not dispute that any of the substances individually could have caused the injuries, but suggested other potential causes including genetic predispositions and a prior history of drug abuse.

The procedural posture in which this matter has reached us therefore does not permit a definitive answer to the question, as a matter of fact, about the cause or causes that led to plaintiff's injuries, either temporary or permanent. Nor can we determine the sequence of events that led to the injuries or whether drugs provided or used at the party, that is the excluded acts, had a substantial nexus to those injuries. The question, therefore, is what the language of the exclusion means in this context and, more to the point, how the duties to defend and indemnify should be evaluated. Although the record is not sufficiently developed to decide the question of the insurer's liability for indemnity, the duty to defend can be resolved utilizing our traditional analysis.

In evaluating the duty to defend, we can lay the complaint and the policy side by side and see that in this dispute some theories of liability would be covered and others would not. If, for example, the finder of fact were to conclude that alcohol ingestion, either in the context of the social host serving plaintiff when she was visibly intoxicated, see *Kelly v. Gwinnell*, 96 *N.J.* 538, 476 *A.2d* 1219 (1984), or in combination with a delay in summoning aid, was the cause for the injuries, or set the chain of events in motion, and that there was not a substantial nexus between drugs at the party and the injuries, the claim would fall within the coverage of the policy and would not be barred by the exclusion. If the finder of fact were to conclude that plaintiff's injuries were caused by use of drugs before she arrived at the party, by genetic predisposition, or by long-term drug use such that the injuries did not "originate in," "grow out of" or have a "substantial nexus" to her use of drugs at the party, the claim would also be covered. Whether any of those possibilities is the likeliest outcome is of no consequence, because our traditional analysis of the duty to defend requires that Pennsylvania General provide a defense. *See Burd, supra,* 56 *N.J.* at 388–89, 267 *A.2d* 7; *Flanagin, supra,* 44 *N.J.* at 512, 210 *A.2d* 221.

The record before us does not permit us to resolve the question of the insurer's duty to indemnify. As we noted in *Burd, supra*, however, in those thorny situations in which there are some covered theories coupled with alternatives in which the claim would not be covered, the insurer has several options available to it. They include opting to defend under a reservation of rights, declining to do so, preferring to await the outcome and to reimburse its insured if the finder of fact decides the injury did not "arise out of" drug use, as we have defined it, or electing to litigate the coverage issue in advance of a trial on plaintiff's claim, disputing the proof of causation against its insured first. The duty to defend, however, is not dependent upon whether there is a finding that the claim is covered; instead it attaches because our analysis of the exclusion demonstrates that there are potentially covered claims.

## V.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Justice LaVECCHIA, concurring in judgment.

I concur in the judgment of the Court for the simple reason that I find the Court's decision in *The Salem Group v. Oliver*, 128 *N.J.* 1, 607 *A.*2d 138 (1992), to be controlling. Although I believe Justice Clifford, in a dissent joined by Justice Garibaldi, had the better argument in *Salem Group*, the majority in that case concluded otherwise and established a dual or concurring causation test for determining whether there exists a duty to defend under a homeowner's policy notwithstanding a specific policy exclusion, *id.* at 3, 607 *A.*2d 138, a test that Pennsylvania General Insurance Company (Penn General) did not ask us to reconsider.[1]

---

[1] Instead, Penn General focuses on the phrase "arising out of" in the exclusion and argues that that phrase should be interpreted to mean "incident to" or "in connection with" and does not denote any type of causal link.

In *Salem Group*, the insured's minor nephew was injured while operating an all-terrain vehicle (ATV). *Ibid.* The nephew's complaint against the insured included a count alleging social host liability because the insured had apparently provided his nephew with alcohol prior to the ATV accident. *Ibid.* The insurer refused to defend or indemnify the insured because a clause in the homeowner's insurance policy excluded from coverage "any loss . . . for bodily injury . . . arising out of . . . operation, ownership, or use of . . . motor vehicles owned . . . by . . . an insured." *Ibid.* Despite acknowledging that the operation of a motor vehicle—the ATV—was a cause of the nephew's injuries, the Court in *Salem Group* held that the insurer had a duty to defend "because the alcohol and the ATV allegedly were concurrent causes of [the nephew's] accident." *Id.* at 6, 607 *A.*2d 138. That holding in *Salem Group* set the stage for subsequent case law, which has required that, to eliminate a duty to defend, an insurance policy must unambiguously state that an exclusion will operate notwithstanding any concurrent or sequential causation issues even when the policy's exclusion is otherwise clear and specific. *See Farmers' Mut. Ins. Co. of Salem County v. Allstate Ins. Co.*, 341 *N.J.Super.* 346, 353–54, 775 *A.*2d 514 (App.Div.2001) (stating that homeowner's insurance policy "expressly excludes coverage under any theory of concurrent contributing causes"); *cf. Simonetti v. Selective Ins. Co.*, 372 *N.J.Super.* 421, 431, 859 *A.*2d 694 (App.Div. 2004) (finding homeowner's insurance coverage for policy that "does not contain an anti-concurrent or anti-sequential clause . . ., which would exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured").

No doubt, in drafting the policy that is in dispute in the present matter the insurer attempted to distance itself as far as possible from behavior inconsistent with public policy—namely, the use of illegal drugs—to avoid any obligation to provide coverage for injuries that arise from the use of such contraband. The policy reflects a clear desire not to be liable for any injuries having a substantial nexus to the illegal behavior associated with drugs and

their use, hence the policy exclusion's use of the words "arising out of," which convey a broader reach than a direct causative effect. *See Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 *N.J.* 29, 35, 713 *A.*2d 1007 (1998) ("The phrase arising out of has been defined broadly ... to mean conduct originating from, growing out of or having a substantial nexus with the activity for which coverage is provided." (internal quotation marks and citations omitted)); *see also Prudential Prop. & Cas. Ins. Co. v. Brenner*, 350 *N.J.Super.* 316, 322, 795 *A.*2d 286 (App.Div.2002) (holding that killing of drug-dealer was not covered under homeowner's insurance policy because exclusion denied coverage for injuries " 'arising out of the use, sale, manufacture, delivery transfer, or possession' of illegal drugs").

This case presents an even more compelling basis to find that the insurer has no more duty to the insured than existed in *Salem Group*, because the exclusion in issue here is in accord with the public policy of our state, which clearly opposes the use of illegal drugs. *See, e.g., N.J.S.A.* 2C:35–1.1(b) ("[T]he unlawful use ... of [illegal drugs] continues to pose a serious and pervasive threat to the health, safety and welfare of the citizens of this State."). New Jersey courts have not hesitated to look to public policy when interpreting insurance contracts. *See, e.g., Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 270, 952 *A.*2d 1077 (2008) (stating that, in regard to insurance policies, "we have long assume[d] a particularly vigilant role in ensuring their conformity to public policy and principles of fairness" (alteration in original) (internal quotation marks and citation omitted)). And, not only does the exclusion support public policy by disapproving of the use of illegal drugs, it is also sensible from the point-of-view of an insurer who cannot accurately formulate underwriting guidelines because the use of illegal drugs is by its very nature an illicit activity.

Here, however, the complaint did not allege that plaintiff was injured due to the use of illegal drugs alone, but rather that plaintiff was injured due to a mixed cause: a drug she claimed was provided by the insured's son and alcohol provided and served to her at the party when she already was inebriated. Plainly, the

latter addresses a social host theory of liability that is independent of the policy exclusion for illegal drugs and would be covered under the policy. But, wrapped together—as the claims are in the complaint and in the experts' reports opining as to the cause of Wendy Flomerfelt's injuries—the two are intertwined.[2] How those claims sort out at trial remains to be seen.

In this setting, and for purposes of resolving whether there exists a duty to defend plaintiff's third-party complaint, the issue has been settled by *Salem Group*. Because the instant policy did not unambiguously declare that coverage would be excluded for injuries arising out of the use of illegal drugs *"regardless of any other cause or event contributing concurrently or in any sequence to the loss,"* or words to that effect,[3] the holding in *Salem Group* is

---

[2] The majority states that

> [a] vivid and useful depiction of the method to be utilized in evaluating an insurer's duty to defend is ... that "the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured."
> [*Ante* at 445, 997 *A.2d* at 998 (quoting *Danek v. Hommer*, 28 *N.J.Super.* 68, 77, 100 *A.2d* 198 (App.Div.1953), *aff'd o.b.*, 15 *N.J.* 573, 105 *A.2d* 677 (1954)).]

While that language may present a helpful visualization tool, it should also be remembered that "[i]nsureds expect their coverage and defense benefits to be determined by the nature of the claim against them, not the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 *N.J.* 188, 198–99, 607 *A.2d* 1266 (1992). For instance, the complaint does not allege that alcohol alone caused Wendy Flomerfelt's injuries. However, the experts' reports suggest that alcohol could have been the sole cause of her injuries, and one of the experts opined that genetic predispositions and a prior history of drug abuse could have also caused her injuries. Even though such possibilities were not mentioned in the complaint, they should be considered when determining the insured's duty to defend, because we should not allow an "insurance company to construct a formal fortress of the third-party's pleadings and to retreat behind its walls." *Id.* at 199, 607 *A.2d* 1266 (internal quotation marks and citation omitted).

[3] Penn General obviously knew how to incorporate that language because it included such a clause in the same policy's provisions concerning exclusions

controlling. *See Simonetti, supra,* 372 *N.J.Super.* at 431, 859 *A.*2d 694 (relying on fact that insurer utilized clause excluding coverage for concurrent or sequential causes in one section of policy and not in another). If Penn General had included a clause excluding coverage in cases where the use of illegal drugs was a concurrent or contributing cause of personal injury, it would not have a duty to defend Matthew Cardiello.[4] But, because Penn General did not include such a clause in the insurance policy, a defense must be provided until more is known about the cause or causes of Wendy Flomerfelt's injuries.[5]

For that reason, and that reason alone, I concur in the judgment reached today. As stated, a different outcome is preferable because the better-reasoned view in *Salem Group* was expressed by Justices Clifford and Garibaldi in dissent; however, that per-

---

applicable to property damage. The policy provides, in the context of property damage only, that coverage for direct or indirect loss "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

[4] Other alternatives might also achieve Penn General's desired outcome. This Court has upheld application of a conduct-based exclusion that applies notwithstanding a lack of causation. *See Aviation Charters, Inc. v. Avemco Ins. Co.,* 170 *N.J.* 76, 77–78, 784 *A.*2d 712 (2001) (excluding coverage for damage to aircraft "operated in flight by a pilot who is not an 'approved' pilot" despite fact that damage was not caused by pilot's actions (quotation marks omitted)). There the non-causation-based exclusion was evident from its wording, and was unlike the wording presented in this matter. The "arising out of" language here is identical to that used in *Salem Group,* hence the seminal importance of that holding to the instant matter.

[5] The majority in *Salem Group, supra,* was careful to limit its holding to an insurer's duty to defend, and did not suggest that the insurer had a duty to indemnify the insured under a concurrent causation theory. 128 *N.J.* at 6, 607 *A.*2d 138. The majority opinion in the present matter is similarly limited. *See ante* at 457–58, 997 *A.*2d at 1005–06. If it is established that Wendy Flomerfelt suffered injuries "arising out of" the use of illegal drugs she ingested at the party and that Matthew Cardiello had knowledge of such use, Penn General will have no duty to indemnify Matthew Cardiello. Again, I understand the majority to be in accord with that conclusion. *See ante* at 454–56, 997 *A.*2d at 1004–05.

spective did not prevail. Accordingly, although I do not embrace the reasoning espoused by the majority in *Salem Group*, it nevertheless remains precedent deserving of respect. That respect for stare decisis is the simple, and sole, reason for my concurrence in the judgment reached today.

Justice RIVERA-SOTO joins in this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.