**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3073
_____

MONTVILLE TOWNSHIP BOARD OF EDUCATION,
                                    Appellant

v.

ZURICH AMERICAN INSURANCE COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 2-16-cv-04466)
District Judge: Hon. Kevin McNulty
_____

Argued
June 26, 2019
_____

Before: CHAGARES, GREENAWAY, JR., and GREENBERG, *Circuit Judges*.

(Opinion Filed: July 26, 2019)

Stephen J. Edelstein [ARGUED]
Weiner Law Group
629 Parsippany Road
Parsippany, NJ 07054

    *Counsel for Appellant*

Lorraine M. Armenti [ARGUED]
Coughlin Duffy
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962

    *Counsel for Appellee*

_____

OPINION [*]

_____


GREENAWAY, JR., *Circuit Judge*.

This appeal asks us to consider whether a specific exclusion provision in an insurance policy relieves an insurance company of the duty to defend an insured school district in a separate child abuse lawsuit generally alleging that the school district knew about its former employee's sexual abuse of students. Like the District Court, we conclude that the insurance company does not have a duty to defend the school district because the allegations made in the other lawsuit plainly fall within the exclusion provision. Accordingly, we will affirm the District Court's appealed summary judgment order.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

# I. BACKGROUND

## A. Factual Origins

Appellant Montville Township Board of Education ("Montville") hired Jason Fennes ("Fennes") as a first-grade teacher and track coach in September 1998. After several reports and investigations of his alleged sexual abuse against students, Fennes resigned in June 2010. Months later, in September 2010, Cedar Hill Prep School ("Cedar Hill") hired him as a teacher. In March 2012, while still employed by Cedar Hill, Fennes was arrested and indicted on charges of sexually abusing a number of Montville students between 2005 and 2008 and a Cedar Hill student between 2010 and 2011.

In August 2012, a student at Cedar Hill ("Child M") sued Fennes and Cedar Hill for injuries resulting from Fennes's sexually abusing her in February 2012. In her third amended complaint ("Complaint") filed in January 2015, Child M added Montville as a defendant, specifically alleging that the school district knew about Fennes's sexual abuse, failed to notify the authorities, and agreed to withhold Fennes's history of sexual abuse from his prospective employers. The lawsuit ("Child M Action") thus claimed that Montville enabled and facilitated Fennes's sexual abuse at Cedar Hill.

During the relevant time, Montville held an insurance policy ("Policy") with Appellee Zurich American Insurance Co. ("Zurich"). The Child M Action potentially implicates two coverage parts of the Policy: while the first ("Commercial General Liability Part") generally excludes coverage for "bodily injury . . . arising out of or relating in any way to an abusive act," App. 155 (internal quotation marks omitted), the second ("Abusive Acts Part")—the only part at issue in this appeal—obligates Zurich to

3

defend Montville against any lawsuit for "loss because of injury resulting from an abusive act to which th[e] [Policy] applies," *id.* at 173 (internal quotation marks omitted). The latter part defines "loss" as generally comprising "those sums that the insured is legally obligated to pay as damages" and "injury" as meaning "physical injury, sickness, disease, mental anguish, mental injury, shock[,] fright[,] or death of the person(s) who is the subject of an abusive act." *Id.* at 177 (internal quotation marks omitted). Further, it defines an "abusive act" as being:

> [A]ny act or series of acts of actual or threatened abuse or molestation done to any person, resulting in injury to that person, including any act or series of acts of actual or threatened sexual abuse or molestation done to any person, resulting in injury to that person, by anyone who causes or attempts to cause the person to engage in a sexual act:
>
> (a) Without the consent of or by threatening the person, placing the person in fear[,] or asserting undue influence over the person;
>
> (b) If that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; or
>
> (c) By engaging in or attempting to engage in lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of any person.

*Id.* (internal quotation marks omitted).

But the Abusive Acts Part also includes an exclusion ("Prior Known Acts Exclusion") of its own. Under that exclusion, there is no coverage under the Abusive Acts Part of the Policy for "[a]ny claim or suit based upon, arising out of[,] or attributable, in whole or in part, to any abusive act of which any insured, other than any insured actually committing the abusive act, has knowledge prior to the effective date" of the Policy. *Id.* at 174 (internal quotation marks omitted). As pertinent here, the Policy

4

took effect in July 2011.

Approximately a week after Child M filed the Complaint, Zurich sent Montville a letter disclaiming coverage and reserving its rights under the Policy.  According to Zurich, it had no obligation to defend Montville under either part of the Policy.  As to the Commercial General Liability Part, Zurich determined that Child M's bodily injury arose from Fennes's abusive acts, thereby excluding coverage.  As to the Abusive Acts Part, Zurich concluded that the allegations in the Complaint brought the Child M Action within the Prior Known Acts Exclusion, therefore also barring coverage.

### B. Procedural History

In June 2016, Montville thus brought the instant lawsuit.  Originally, the case took the form of an order to show cause in New Jersey state court, seeking a declaration that Zurich owed Montville a duty to defend it in the Child M Action.  But Zurich removed this case to the District Court on the basis of diversity jurisdiction.

Before the District Court, the parties agreed to trifurcate the case, with the duty to defend up first for determination.  Both parties eventually filed cross-motions for summary judgment on the issue.  In a thorough and well-reasoned opinion, the District Court ruled in Zurich's favor, holding that it did not have a duty to defend Montville in the Child M Action.  Following the parties' lead, that opinion focused its analysis on the Commercial General Liability Part of the Policy.  In particular, the opinion determined that the injuries alleged in the Complaint arose out of abusive acts, rendering coverage excluded under the plain language of the Commercial General Liability Part.

Mere weeks later, however, Montville apparently changed its approach.  In a

5

motion for reconsideration, Montville argued that it is entitled to coverage under the Abusive Acts Part instead of the Commercial General Liability Part. Out of an abundance of caution, the District Court granted Montville's motion. In so doing, the District Court clarified that it would construe its prior summary judgment opinion as being a partial grant of summary judgment on the issue of Zurich's duty to defend under the Commercial General Liability Part. Further, the District Court granted the parties permission to file second partial summary judgment motions, this time on the issue of Zurich's duty to defend under the Abusive Acts Part.

Soon, the parties filed their cross-motions for partial summary judgment on coverage under the Abusive Acts Part. In another well-crafted opinion, the District Court again ruled for Zurich. First, the District Court determined, as the parties agreed, that the injuries alleged in the Child M Action resulted from an abusive act, thereby falling within the general ambit of the Abusive Acts Part. Second, however, the District Court concluded that the Prior Known Acts Exclusion negated Zurich's duty to defend because Child M explicitly alleged in the Complaint that Montville was on notice of abusive acts by Fennes before the Policy's effective date.

Montville now appeals the District Court's second partial summary judgment ruling. Importantly, Montville does not also appeal the first partial summary judgment ruling. This appeal is therefore limited to the question of whether the Policy's Abusive Acts Part—not its Commercial General Liability Part—obligates Zurich to defend Montville in the Child M Action.

## II. JURISDICTION

The District Court had jurisdiction over this case under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

We exercise plenary review over a district court's order granting summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). Here, in conducting such a plenary review of the District Court's second partial summary judgment ruling, we must construe all evidence in the light most favorable to Montville. *See id.* In doing so, summary judgment is appropriate only if there is "no genuine dispute as to any material fact and [Zurich] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if "a reasonable jury could return a verdict for [Montville]." *Id.* Zurich here bears the burden of identifying specific portions of the record that establish the absence of a genuine dispute of material fact. *See Santini*, 795 F.3d at 416. Accordingly, the District Court's summary judgment order is proper only if, construing the evidence in the light most favorable to Montville, we conclude that there is no genuine dispute of material fact and Zurich is due judgment as a matter of law. *See id.*

## IV. DISCUSSION

On appeal, Montville asserts two arguments. First, Montville contends that the Complaint is rife with ambiguity, precluding its allegations from definitively falling within the ambit of the Prior Known Acts Exclusion. Second, Montville avers that the

7

District Court violated prevailing law by ignoring evidence extrinsic to the Complaint that purportedly indicates that Montville did not know about Fennes's prior abusive acts. But both arguments are unavailing. We will therefore affirm the District Court's appealed summary judgment decision.

## A. Relevant Law

As a federal court reviewing a case grounded on diversity jurisdiction, we are "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). Here, both parties agree that New Jersey substantive law applies to this dispute. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), our task is thus to predict how the Supreme Court of New Jersey would rule if it were deciding this case. *See Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008). We therefore begin our analysis by reviewing New Jersey legal principles relevant to (1) the duty to defend and (2) insurance policy exclusions.

### 1. Duty to Defend

In New Jersey, the "duty to defend comes into being when the complaint states a claim constituting a risk insured against." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992) (citation omitted). "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." *Id.*

"That the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend." *Id.* That is, the duty to defend "is not

8

abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact—in other words, because the cause is groundless, false or fraudulent." *Id.* (citation omitted). Instead, "[l]iability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." *Id.* (citation omitted).

"As a practical matter, the determination of an insurer's duty to defend requires review of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured 'if the allegations are sustained.'" *Abouzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 346 (N.J. 2011) (citation omitted). "[I]f 'the complaint comprehends an injury which *may* be within the policy,' a duty to defend will be found." *Id.* (citation omitted). Put another way, "[i]f the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." *Voorhees*, 607 A.2d at 1259.

"Although courts generally look to the complaint to ascertain the duty to defend, the analysis is not necessarily limited to the facts asserted in the complaint." *Abouzaid*, 23 A.3d at 347 (citations omitted). "Thus, for example, an insurer's duty to provide a defense may also be triggered by 'facts indicating potential coverage that arise during the resolution of the underlying dispute.'" *Id.* (quoting *SL Indus. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1272 (N.J. 1992)). "That notion is said to align with the expectations of insureds, who 'expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured.'" *Id.* (quoting *SL Indus.*, 607 A.2d at 1272).

9

That said, "the insurer has no duty to investigate possible ramifications of the underlying suit that could trigger coverage." *SL Indus.*, 607 A.2d at 1272.

### 2. Insurance Policy Exclusions

"Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citations omitted). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (citations omitted).

"[I]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Id.* at 996–97 (citation omitted). "As a result, exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Id.* at 997 (citation omitted).

"Nonetheless, courts must be careful not to disregard the 'clear import and intent' of a policy's exclusion." *Id.* (citation omitted). As a result, not all "far-fetched interpretation[s] of a policy exclusion [are] sufficient to create an ambiguity requiring coverage." *Id.* (citation omitted). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Id.* (citation omitted).

### B. Analysis

Armed with these legal principles, we now apply them to the facts of this case. In doing so, we individually assess each of Montville's two arguments on appeal: (1) that the Complaint is ambiguous enough that Child M's allegations do not definitively fall

10

within the Prior Known Acts Exclusion and (2) that the extrinsic evidence in the Child M Action indicates that Montville did not know about Fennes's abusive acts before the Policy's effective date. For the reasons that follow, we reject each of these arguments.

<u>1. Ambiguity</u>

Under New Jersey law, the crux of our analysis turns on whether the allegations in the Complaint correspond with the relevant language of the Policy. *Voorhees*, 607 A.2d at 1259. Montville accepts that but still contends that the Complaint's allegations are so ambiguous that we cannot conclusively deem them aligned with the language of the Prior Known Acts Exclusion. We, however, disagree because there is no ambiguity in the plain language of the Complaint when considered as a whole.

As an initial matter, Montville acknowledges that Child M makes the following allegations in the Complaint:

(1) Fennes, while employed by [Montville], "engaged in various negligent, careless, reckless[,] and/or intentional conduct, including but not limited to inappropriate abusive and/or sexual conduct with his infant students" and [Montville] was "on notice of said conduct."

(2) [Montville] was "on notice" "of said reckless and/or intentional conduct, including child abuse, both sexual and nonsexual" so as to trigger a requirement to report . . . ."

(3) [A]s a result of the "negligence, carelessness, recklessness[,] and/or intentional conduct" of the defendants [in the Child M Action], Child M suffered "injuries."

(4) Fennes "engaged in various acts of sexual molestation and/or child abuse against other infant students."

(5) [Montville] was "on notice of said conduct."

(6) Fennes "engaged in various acts of sexual molestation and/or child

11

abuse against . . . his infant students.”

Appellant's Br. 17–18 (citations and footnotes omitted). Montville's only argument in attempting to elude operation of the Prior Known Acts Exclusion is that Child M's use of terms like “abusive” is “vague, undefined, and subject to multiple interpretations,” as the Complaint lacks an “enumeration of specific abusive acts.” *Id.* at 18. For example, Montville posits that the Complaint could be read as simply alleging that Montville only knew Fennes had students sit on his lap in a platonic manner, presumably outside the ambit of the Prior Known Acts Exclusion. This purported ambiguity, as Montville sees it, demands interpretation in its favor. But the District Court rejected this argument and so do we.

A plain reading of the allegations in the Complaint unequivocally brings them within the ambit of the Prior Known Acts Exclusion. That exclusion, as discussed previously, relieves Zurich of the duty to defend only if the Child M Action (1) is attributable, even in part, (2) to abusive acts (3) about which Montville had knowledge (4) prior to July 2011. *See* App. 174. Montville either concedes or does not contest the first, third, and fourth elements of the exclusion. *See* Appellant's Br. 18 (quoting allegations from the Complaint that “as a result of the ‘negligence, carelessness, recklessness[,] and/or intentional conduct’ of [Montville], Child M suffered ‘injuries’” and that Montville was “‘on notice’ ‘of said reckless and/or intentional conduct, including child abuse, both sexual and nonsexual’” (citations omitted)); App. 102–04 (the Complaint's stating that Fennes was a “known pedophile and child molester” and that Montville, “while on notice of said conduct [by September 2010 at the latest], . . .

12

purposefully caused said acts to be concealed from potential future employers of [Fennes], including Cedar Hill").

At this stage, the only question is thus whether Child M's allegations of "abuse," *e.g.*, *id.* at 101, rise to the level of "abusive act[s]" as defined in the Policy, *id.* at 177. Indeed, they do.

As recounted previously, the Abusive Acts Part defines an "abusive act" as being, as relevant here, "any act . . . of actual . . . abuse or molestation done to any person, resulting in 'injury' to that person, including any act . . . of actual . . . sexual abuse or molestation . . . , by anyone who causes or attempts to cause the person to engage in a sexual act . . . if that person is incapable of appraising the nature of the conduct or is physically incapable of declining participation in or communicating unwillingness to engage in the sexual act." *Id.* Child M's allegations squarely fit this definition.[1]

Even if, as Montville now avers, "abus[e]" on its own is somehow vague, Appellant's Br. 17, all of the allegations in the Complaint taken together unambiguously

---

[1] Indeed, the allegations must fit the definition of "abusive act" for us to even get to this point of the analysis. *Id.* That is because, for us to even assess whether the Prior Known Acts Exclusion relieves Zurich of the duty to defend, we must first determine that the Abusive Acts Part as a whole applies. Montville, of course, does not contest that the Abusive Acts Part applies—and for good reason: if it does not apply at all, Zurich is not obligated to defend Montville. Critically, the Abusive Acts Part and the Prior Known Acts Exclusion within it operate using the same definition of "abusive act." *Id.* Thus, if the Complaint's allegations of Fennes's conduct do not rise to the level of being "abusive act[s]" within the Prior Known Acts Exclusion, they also do not fall within the Abusive Acts Part in general. *Id.* Put simply, as they relate to Fennes's conduct, either Child M's allegations are such that both the Abusive Acts Part and the Prior Known Acts Exclusion apply or neither applies. Either way, the result is the same: Zurich is not obligated to defend Montville in the Child M Action.

bring Fennes's alleged conduct within the Policy's definition of "abusive act[s]," App. 177.  Elsewhere in the Complaint, Child M alleges that Montville knew about Fennes's "inappropriate abusive and/or sexual conduct," "child abuse, both sexual and nonsexual," and "various acts of sexual molestation and/or child abuse against . . . infant students" and that this conduct caused her "severe personal injuries," including "great pain."  *Id.* at 100–04.  Of course, at the risk of stating the obvious, an "infant," *id.* at 101, cannot reasonably "apprais[e] the nature" of sexual abuse or molestation, *id.* at 177.  Further, the allegation that Fennes committed "child abuse" of a "sexual" nature cannot be reasonably construed to simply mean that Fennes had children sit on his lap in a platonic manner, as Montville suggests.  *Id.* at 100.  On the whole, then, the Complaint's plain terms match the Policy's definition of an "abusive act" almost verbatim.  *Id.* at 177.  Because there is no ambiguity, there is no doubt to resolve in Montville's favor.

Accepting Montville's position would force us to run afoul of New Jersey law in two respects.  First, it would require us to torture straightforward language to find ambiguity where it does not exist.  That, the Supreme Court of New Jersey tells us, we are not to do.  *See Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990) ("[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability.").

Second, Montville would have us overlook and replace an important qualifier in the relevant legal standard.  The Supreme Court of New Jersey instructs courts, when determining an insurer's duty to defend, to "review . . . the complaint *with liberality*."

14

*Abouzaid*, 23 A.3d at 346 (emphasis added). But Montville would have us do the very opposite. At oral argument, its counsel urged, in various forms, that the Complaint is flawed in that its allegations are "with[out] specificity." Oral Arg. Audio at 14:08–14:10. That, however, is not the standard. Notably, Montville has not produced any case law in support of imputing its concocted qualifier. Since we are charged here with faithfully making an *Erie* prediction, we refuse to adopt Montville's position, which contradicts core principles of New Jersey's duty to defend analysis. As a result, we hold that Child M's allegations in the Complaint plainly fall within the ambit of the Prior Known Acts Exclusion.

### 2. Extrinsic Evidence

Seemingly anticipating this writing on the wall, Montville raises another argument on appeal. In particular, it contends that the District Court violated New Jersey law by ignoring extrinsic evidence—that which emerged over the course of litigating the Child M Action, outside the four corners of the Complaint—which purportedly demonstrates that Montville did not know about Fennes's prior abusive acts. Montville obsesses over the fact that the District Court's second partial summary judgment ruling "failed to analyze, distinguish, or even acknowledge" *SL Industries*, which allows courts to consider such extrinsic evidence. Appellant's Br. 4. But a deeper study of the record reveals why the District Court did not mention the case—and, more importantly, why Montville's argument is dead on arrival now.

That is because Montville entirely failed to raise this argument in its second partial summary judgment motion before the District Court. That motion focused exclusively on

15

comparing the "allegations contained in [the] Complaint" with the "[p]lain [l]anguage" of the Prior Known Acts Exclusion.  Pl.'s Cross-Mot. for Summ. J. Br. 9–10, ECF No. 44-1, in *Montville v. Zurich*, No. 2-16-cv-04466 (D.N.J. filed Feb. 20, 2018).  Curiously, the motion is wholly silent on extrinsic evidence and does not "even acknowledge" *SL Industries*.  Appellant's Br. 4.  It is no wonder, then, that the District Court also did not discuss extrinsic evidence or the case on which Montville now fixates.

At this stage, Montville's failure to raise this argument before the District Court renders it waived, as we have "consistently held that [we] will not consider issues that are raised for the first time on appeal."  *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994) (collecting cases); *see Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) ("It is well established that arguments not raised before the District Court are waived on appeal." (quoting *DIRECTV, Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007), and citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997))).  We therefore need not discuss the merits of Montville's extrinsic evidence argument.

In any event, we note that, even if we were to decide this argument on its merits, Montville has essentially conceded it in Zurich's favor.  The Supreme Court of New Jersey informs us that the rationale behind turning to extrinsic evidence is "to align with the expectations of insureds, who 'expect their coverage and defense benefits to be determined by the nature of the claim against them.'"  *Abouzaid*, 23 A.3d at 347 (quoting *SL Indus.*, 607 A.2d at 1272).  When asked at oral argument whether "the nature of Child M's claims against [Montville] are generally that [it] knew about Fennes's . . . sexual

16

molestation and abuse of students while he worked for [it]," Montville's counsel emphatically agreed. Oral Arg. Audio at 0:58–1:18. By conceding this portrayal of Child M's allegations, which fall undoubtedly within the Prior Known Acts Exclusion, Montville is left with only one reasonable expectation: that Zurich is not obligated to defend it in the Child M Action. Even if we were to turn to extrinsic evidence, our resolution of this coverage dispute would have to align with that expectation. Our outcome would thus be no different.

## V. CONCLUSION

For the foregoing reasons, we rule that the allegations of the Complaint fall within the ambit of the Policy's Prior Known Acts Exclusion, thereby relieving Zurich of the duty to defend Montville in the Child M Action. We will hence affirm the District Court's appealed summary judgment order.