SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

 **Norman International, Inc. v. Admiral Insurance Company** (A-24-21) (086155)

**Argued February 28, 2022 -- Decided August 10, 2022**

**FUENTES, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

This appeal concerns an exclusionary clause in a commercial general liability insurance policy issued by Admiral Insurance Company (Admiral) to Richfield Window Coverings, LLC (Richfield). The clause states that the policy does not cover any liability "arising out of, related to, caused by, contributed to by, or in any way connected with . . . [a]ny operations or activities performed by or on behalf of any insured" in certain counties in New York, including Nassau County.

Richfield sells window coverage products, including blinds, to national retailers like Home Depot and provides retailers with machines to cut the blinds to meet the specifications of the retailers' customers. Its representatives answer questions the employees may have about the operation of the cutting machines and window covering products. Richfield's representatives thereafter visit the retailers' establishments to maintain and repair the machines and replace the cutting blades as needed. Richfield also provides a user manual for retailers' employees to learn how to use the cutting machine and conducts onsite training for employees. The field sales representative in this case visited the Home Depot store at issue every two to three weeks.

Colleen Lorito, an employee of a Home Depot located in Nassau County, was injured while operating the blind cutting machine. She and her husband filed a civil action against Richfield, asserting claims for product liability, breach of warranty, and loss of spousal services. Admiral denied any obligation to defend or indemnify, asserting the claims were not covered under the policy based on the Designated New York Counties Exclusion.

Richfield filed a declaratory judgment action seeking to compel Admiral to defend it in the Lorito case and, if necessary, indemnify it against any monetary damages awarded to the plaintiffs. The Law Division granted summary judgment in favor of Admiral. The Appellate Division reversed, finding that "Richfield's limited activities and operations have no causal relationship to the causes of action or allegations." The Court granted certification. 248 N.J. 540 (2021).

1

**HELD:** The policy's broad and unambiguous language makes clear that a causal relationship is not required in order for the exclusionary clause to apply; rather, any claim "in any way connected with" the insured's operations or activities in a county identified in the exclusionary clause is not covered under the policy. Richfield's operations in an excluded county are alleged to be connected with the injuries for which recovery is sought, so the exclusion applies. Admiral has no duty to defend a claim that it is not contractually obligated to indemnify.

1. Generally, to ascertain whether there is a duty to defend, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, with any doubts resolved in favor of the insured. There are times, however, when comparing the causes of action in the complaint to the exclusionary clause will not provide an answer as to whether there is a potentially covered claim. That situation occurs "when coverage, i.e., the duty to pay, depends upon a factual issue which will not be resolved by the trial." Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388 (1970). In such cases, "the duty to defend may depend upon the actual facts and not upon the allegations in the complaint." Ibid. (pp. 14-15)

2. Here, the threshold question is whether the claims asserted by Lorito are covered by the Admiral policy, whereas the underlying issues in the complaint would require the factfinder to decide whether there was a manufacturing defect, design defect, or a failure to provide adequate warnings, and whether Richfield was negligent in causing Lorito's injuries. None of those underlying issues would require the factfinder to address the applicability of the policy exclusion. The Appellate Division did not cite Burd in its analysis, instead setting forth the general standard that a "complaint should be laid alongside the policy" to determine a duty to defend. Going forward, in similar situations, courts should indicate when an issue requires consideration of facts beyond the complaint. (pp. 16-17)

3. Insurance policies are reviewed using contract principles, and the agreement will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled. If the policy exclusion uses terms that make it plain that coverage is unrelated to any causal link, it will be applied as written and courts will "not read a causal nexus into the otherwise plain terms." Flomerfelt v. Cardiello, 202 N.J. 432, 443 (2010). The Court has not directly considered the meaning of the language "in any way connected with." But, in Flomerfelt, the Court found the phrases "incident to" and "in connection with" to apply broadly, meaning "the injury is connected in any fashion, however remote or tangential." Id. at 456. (pp. 18-21)

4. Here, there is no dispute that Lorito was injured in Nassau County, one of the counties listed in the exclusionary clause. Therefore, the relevant issue is whether Richfield's activities at the store are sufficient to trigger the exclusion -- that is, did

2

they "actually or allegedly aris[e] out of, [or are they] related to, caused by, contributed to by, or in any way connected with" the activities of Richfield or "on behalf of" Richfield?  To focus on a causal relationship reads key language out of the policy because the phrases "in any way connected with" and "related to" do not require any element of causation.  Lorito was injured while using the blind cutting machine, which was provided by Richfield.  The fact that Richfield provided the machine to Home Depot is enough to trigger the exclusion because the phrase "in any way connected with" merely requires that the two are linked in some way, even if they are only tangentially connected.  Richfield employees also went to the store on a regular basis to change the blades and fix the machine, and Richfield provided a manual and trained employees on how to use the machine.  Given those facts, the injuries were also "related to" Richfield's actions at the store.  The activities by the insured constitute a sufficient basis to trigger the policy's Designated New York Counties Exclusion.  The claim filed by Richfield is not covered under the policy and Admiral did not have a duty to defend.  (pp. 21-23)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-24 September Term 2021

086155

Norman International, Inc., and
Richfield Window Coverings, LLC,
d/b/a Nien Made (USA), Inc.,

Plaintiffs-Respondents,

v.

Admiral Insurance Company,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| February 28, 2022 | August 10, 2022 |

Justin N. Kinney argued the cause for appellant (Kinney
Lisovicz Reilly & Wolff, attorneys; Justin N. Kinney,
Michael S. Chuven, and Timothy P. Smith, of counsel
and on the briefs).

Ryan Milun argued the cause for respondents (The Milun
Law Firm, attorneys; Ryan Milun, on the brief).

JUDGE FUENTES (temporarily assigned)
delivered the opinion of the Court.

1

This appeal concerns an exclusionary clause in a commercial general liability insurance policy. This exclusionary provision specifically denies coverage for any incidents, costs, or expenses arising out of or related to operations or activities performed by or on behalf of the insured in certain counties in the State of New York.

Richfield Window Coverings, LLC, d/b/a Nien Made (USA), Inc. (Richfield), is a seller of window coverings, blinds, shades, and shutters headquartered in Santa Fe Springs, California. Richfield sells its products to national retailers such as Home Depot, Walmart, and Bed Bath & Beyond. Richfield also provides the retailers with cutting machines designed to cut the blinds to meet the customers' specifications.

Admiral Insurance Company (Admiral), located in Mount Laurel, New Jersey, issued a general liability insurance policy to Richfield containing an exclusionary clause, which expressly states that the policy does not provide coverage for any liability "arising out of, related to, caused by, contributed to by, or in any way connected with . . . [a]ny operations or activities performed by or on behalf of any insured" in certain specifically identified counties in New York, including Nassau County. The exclusionary clause also states the insurer "shall have no duty to investigate, defend or indemnify any insured against any loss, claim, [or] 'suit'" arising in an excluded county.

2

Here, an employee of a Home Depot store located in Freeport, in Nassau County, New York, was injured while operating a blind cutting machine provided to Home Depot and maintained by Richfield. The Home Depot employee filed a civil action in Nassau County against Richfield seeking compensatory damages. When Richfield notified Admiral of the lawsuit, the insurer invoked the policy's exclusionary clause and asserted it was not contractually obligated to assign counsel to represent Richfield in the Nassau County litigation, or to indemnify Richfield against any damages awarded to the Home Depot employee.

Richfield filed a declaratory judgment action in the Superior Court and argued Admiral had a duty to defend the insured because the terms "operations" and "activities" in the policy's Designated New York Counties Exclusion were ambiguous and subject to multiple interpretations, and thus must be construed in favor of the insured. The Law Division judge rejected that argument and granted Admiral's motion for summary judgment. The judge held that allegations of "bodily injury" that are "merely 'related to' or 'in any way connected with' [Richfield's] 'activities or operations' within the Home Depot store [are] sufficient to trigger the New York Counties exception" in the Admiral policy.

3

The Appellate Division reversed, finding there was no "causal relationship" between Richfield's activities involving the blind cutting machine and the causes of action raised in the complaint.

We believe that the Appellate Division's analysis relied on too narrow a reading of the exclusionary provision of the policy at issue. Its broad and unambiguous language makes clear that a causal relationship between Richfield's conduct and plaintiff's injuries is not required in order for the exclusionary clause to apply; rather, any claim "in any way connected with" Richfield's operations or activities in a county identified in the exclusionary clause is not covered under the policy. Here, Richfield's operations in Nassau County -- an excluded county -- are alleged to be connected with the injuries sustained by the Home Depot employee. Admiral has no duty to defend a claim that it is not contractually obligated to indemnify in the event Richfield does not prevail at trial. We thus reverse the judgment of the Appellate Division and affirm substantially for the reasons expressed by the Law Division judge.

I.

A.

We derive the following facts from the record developed by the parties in the course of discovery.

4

Richfield sells Nien Made window coverage products to national retailers. Home Depot is one of the retailers that purchases window coverage products from Richfield. Richfield also provides retailers with machines to cut the blinds to meet the specifications of the retailers' customers. In addition to shipping the cutting machines to the retailer, Richfield's representatives answer general questions the employees may have about the operation of the cutting machines and window covering products. Richfield's representatives thereafter visit the retailers' establishments to maintain and repair the machines and replace the cutting blades as needed. Richfield also provides a user manual for retailers' employees to learn how to use the cutting machine and conducts onsite training for employees.

Harjit Singh is the president of Richfield. In his deposition testimony, Singh confirmed Richfield does not have a contractual relationship with its buyers. Instead, the relationship is governed by a "supplier buying agreement." Richfield receives payment from buyers like Home Depot after it ships its window covering products. Once the buyer receives and pays for the shipments, the products are deemed the buyer's property, regardless of whether they sell all or some of the product to retail purchasers.

During his deposition, Singh provided the following explanation of Richfield's distribution process:

5

Q. . . . . Does Richfield do business in New York?

. . . .

A. We don't do business directly in New York at all. We sell to customers who do business in New York.

Q. Okay. But you're selling products in New York, correct?

A. We don't sell products in New York. We sell products to Home Depot, Walmart, Bed Bath & Beyond and all these companies. And they sell our products in their stores. So we don't sell products in those stores.

Q. I understand you're not selling the product in the stores, but do you sell the product to the stores?

A. No. We sell the product to the parent company, and their companies decide where the product goes to. Some stores may not have the product. Some stores do.

Q. I didn't understand that distinction. Stores don't get the product directly from you?

A. No.

Q. Okay. It's sold to a parent, Home Depot?

A. Yes.

Q. But do stores get the machine directly from you?

A. Yes.

Although Richfield's supplier agreement with Home Depot does not expressly mention the blind cutting machines, Singh made clear the cutting machines were an "implicit" part of Richfield's blinds sales because they

6

provided the "cutting solution" needed to ensure the blinds fit the dimensions of windows.

Richfield delivers the blind cutting machine to the store and Home Depot installs it. Richfield's "field sales representatives" visit the stores to train Home Depot employees about Richfield's products. The field sales representative in this case visited the Home Depot store at issue every two to three weeks.

Home Depot employees are the only ones who operate the blind cutting machines. If problems arise, Home Depot personnel are required to call Richfield's customer service number or report the problem via Richfield's website. Singh reaffirmed it is "incumbent and inclusive in the activities and work of" the field sales representatives to respond to customers' service calls and to repair the blade cutting machines or supply the customer with a new one if the machine is beyond repair. Richfield also works with Home Depot to design the "bay" where Richfield's product and cutting machine are displayed.

Singh estimated that, in 2017, Richfield's business with Home Depot constituted sixty percent of its sales and that ninety-five percent of Richfield products sold by Home Depot required the use of the blind cutting machine. It is thus clear that Home Depot's sale of Richfield's products was inextricably tied to the availability of the blind cutting machines, making Home Depot's

7

use of the machine "a necessity" for Richfield. Singh denied, however, that Home Depot's use of the cutting machines constitutes an activity or operation of Richfield because it is "Home Depot's activities, not ours." He nevertheless acknowledged that "[t]he machines are provided as part of our business activities we have at Home Depot" and that Richfield could not sell its products without the machine.

B.

On August 12, 2017, Colleen Lorito, an employee of Home Depot located in Nassau County, New York, was operating the blind cutting machine when her left hand came into contact with the blade, severing parts of her fingers. Lorito claimed the machine did not have a safety guard at the time of the accident. On September 14, 2018, she and her husband filed a civil action against Richfield alleging negligent design, breach of express warranty, breach of implied warranty, failure to warn, strict liability for manufacturing defect, strict liability for design defect, and loss of spousal services.

Admiral denied "any obligation to defend or indemnify Nien Made and Nien Made USA,"[1] asserting the claims were not covered under the Admiral policy based on the Independent Contractors Exclusion and the Designated

---

[1] Nien Made USA is the trade name for Richfield.

New York Counties Exclusion. This appeal concerns only the Designated New York Counties Exclusion, which provides:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with:
>
> (1) Any operations or activities performed by or on behalf of any insured in the Counties shown in the Schedule above; or
>
> (2) Any premises, site or location owned, leased, occupied, maintained or used by or on behalf of any insured in the Counties shown in the Schedule above.
>
> We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.
>
> [(emphases added).]

The schedule referenced in this exclusionary provision lists the following counties: "Bronx, Kings, Nassau, New York, Queens, Richmond, Rockland, Suffolk and Westchester Counties in the State of New York." (emphasis added). It is undisputed that Lorito was injured while performing a work-related function as an employee of a Home Depot located in Nassau County, New York.

9

Richfield filed a declaratory judgment action against Admiral in the Law Division, Morris County, seeking to compel Admiral to assign counsel to defend it in the <u>Lorito</u> case and, if necessary, indemnify it against any monetary damages awarded to the plaintiffs. Admiral filed a responsive pleading that included a counterclaim seeking a judicial declaration that it did not have an "obligation to defend or indemnify [p]laintiffs for the Underlying Action."

The parties initially attempted to resolve the issue through non-binding arbitration. The arbitrator found in favor of Admiral, noting that the Designated New York Counties Exclusion applied and unambiguously denied Richfield coverage in this case. Richfield filed notice for a trial de novo and moved for summary judgment. Admiral also moved for summary judgment. The Law Division judge heard argument on the parties' cross-motions for summary judgment and ultimately granted Admiral's motion, declaring it had no duty to defend or indemnify Richfield. The motion judge found that

> [i]t is undisputed that the Admiral policy unambiguously contains a "Designated New York Counties Exception," which states, "[t]his insurance does not apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury,' including costs or expenses actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with: (1) any operations or activities performed by or on behalf of any insured in the Counties shown in the

10

schedule above." . . . It is also undisputed that the Home Depot store where . . . Lorito was employed and injured is located in Nassau County, New York, one of the excluded New York counties. . . . Thus, if Richfield, or any other party on behalf of Richfield, performed "operations or activities" within the Nassau County Home Depot, [then] the "Designated New York Counties Exception" would preclude coverage for the underlying action.

In response to Richfield's appeal, the Appellate Division reversed and remanded the case, finding "the motion judge erred in granting summary judgment to defendant on the basis of the 'Designated New York Counties Exclusion.'" The appellate court found that "Richfield's limited activities and operations have no causal relationship to the causes of action or allegations." The appellate court also concluded that the claims here did not have any "relationship with the maintenance or repair of the blind cutting machines, the training of Home Depot employees, or the cleaning of the machines," which was the extent of Richfield's connection to this Home Depot.

## C.

We granted Admiral's petition for certification, asking this Court to determine whether the New York Counties Exclusion applies here. 248 N.J. 540 (2021).

11

II.

A.

Admiral argues the Appellate Division erred in "relying on the allegations of the complaint" because "the factual issues relevant to the applicability of the New York Counties Exclusion will not be decided in the Underlying Action." Admiral claims the decision of the Appellate Division "pulverized the standard for insurers to determine whether they owe a duty to defend" established by this Court in Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388-89 (1970). According to Admiral, the Appellate Division erroneously relied on the limited description reflected in the complaint instead of the relevant facts adduced during discovery, which established that the underlying event occurred in Nassau County, thus triggering the exclusion. Admiral maintains there is no duty to defend in the absence of a duty to indemnify. Thus, the Appellate Division decision creates a conflict of interest in requiring it to defend.

Admiral also argues the Appellate Division incorrectly interpreted the terms of the Designated New York Counties Exclusion and failed to appreciate the significance of the clause's disjunctive list and the use of the word "or," which directs that the exclusion is satisfied if any of the terms apply. Finally,

Admiral asserts the terms of the policy's exclusionary clause do not require a causal relationship between Lorito's injury and Richfield's activities.

## B.

Richfield argues the Appellate Division correctly "applied well-settled . . . case law on the interpretation of insurance policies and properly considered all relevant facts." Richfield argues <u>Burd</u> is not applicable here because the coverage question can be decided by resolving the issues in the underlying action. According to Richfield, a Nassau County jury must determine how Lorito was injured. That determination, Richfield argues, "will ultimately be used to either trigger indemnity coverage or not."

Richfield also argues the Appellate Division did not create a new duty to defend when there is no duty to indemnify because the court focused only on determining whether the exclusion applied rather than on deciding the indemnity issue. Finally, Richfield argues the appellate court did not limit its consideration to the facts alleged in the complaint.

## III.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." <u>Woytas v. Greenwood Tree Experts, Inc.</u>, 237 N.J. 501, 511 (2019). Under

> that standard, summary judgment should be granted
> "when 'the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"

[Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)); accord R. 4:46-2(c).]

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

## A.

## 1.

The issue in this case is whether Admiral has a duty to defend Richfield against the Loritos' claims. See Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010) (explaining that a court may have to determine if there is a duty to defend "in advance of a conclusive decision about coverage," which may not be clearly ascertained before discovery or trial).

Generally, to ascertain whether there is a duty to defend, "[t]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment," with any doubts "resolved in favor of the insured."

14

Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 79-80 (2011)

(quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b.,

15 N.J. 573 (1954)).

There are times, however, when comparing the causes of action in the complaint to the exclusionary clause will not provide an answer as to whether there is a potentially covered claim. That situation occurs "when coverage, i.e., the duty to pay, depends upon a factual issue which will not be resolved by the trial." Burd, 56 N.J. at 388. In such cases, "the duty to defend may depend upon the actual facts and not upon the allegations in the complaint." Ibid. Stated differently, if coverage will not be an issue resolved during trial, it may not be sufficient to look only at the complaint because the duty to defend depends on facts not relevant to the causes of action in the complaint. See ibid.

Writing for the Court in Burd, Chief Justice Weintraub proposed the following factual scenario to illustrate how to address this threshold issue:

> [I]f a policy covered a Ford but not a Chevrolet also owned by the insured, the carrier would not be obligated to defend a third party's complaint against the insured which alleged the automobile involved was the Ford when in fact the car involved was the Chevrolet. The identity of the car, upon which coverage depends, would be irrelevant to the trial of the negligence action.
>
> [Ibid.]

The Court in <u>Burd</u> acknowledged the potential conflict of interest created "if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay," or if the insurer's defense may "prejudice the insured." <u>Id.</u> at 389. In <u>Burd</u>, for example, coverage depended on whether there was intentional injury inflicted because there was an exclusion for such harm. <u>Ibid.</u> If that coverage issue were not decided before the insurance company had to defend, it would give the insurance carrier the incentive to not defend strongly on the issue of intentional harm, because if the harm was intentionally caused, the claim would fall within the exclusionary clause in the policy. <u>Id.</u> at 389-90; <u>accord</u> <u>Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.</u>, 98 N.J. 18, 25 (1984) (noting "it is even clearer here than in <u>Burd</u> that the coverage question could not properly be resolved by the trial of the underlying action" because the cause of action in the complaint was for failure to warn but coverage depended on the "date [the] plaintiff . . . suffered bodily injury"). <u>Id.</u> at 28.

### 2.

Here, the threshold question is whether the claims asserted by Lorito are covered by the Admiral policy, whereas the underlying issues in the complaint would require the factfinder to decide whether there was a manufacturing defect, design defect, or a failure to provide adequate warnings, and whether

16

Richfield was negligent in causing Lorito's injuries.  None of those underlying issues would require the factfinder to address the applicability of the policy exclusion.

The Appellate Division did not cite Burd in its analysis, instead setting forth the general standard that a "complaint should be laid alongside the policy" to determine a duty to defend.  (quoting Flomerfelt, 202 N.J. at 445).  Going forward, in similar situations, courts should indicate when an issue requires consideration of facts beyond the complaint.  But here, despite the standard cited, the appellate court noted the trial court's consideration of facts from discovery, including that Richfield employees visited the store to change the machine's blades, perform maintenance on the machine, and provide training resources to employees, each of which was not discussed in the complaint.

As we now turn to the policy's exclusionary clause to determine whether the activities and operations of Richfield were sufficient to trigger the coverage exclusion or whether Admiral has a duty to defend, we specify that our analysis included consideration of those facts beyond the complaint necessary to determine the duty to defend issue.  See Hartford Accident & Indem. Co., 98 N.J. at 25; Burd, 56 N.J. at 388.

B.

1.

Insurance policies are reviewed using contract principles, and the "agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt, 202 N.J. at 441). Terms in the contract "are given their 'plain and ordinary meaning.'" Ibid. (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). Exclusionary clauses will be "presumed valid if they are 'specific, plain, clear, prominent and not contrary to public policy.'" Id. at 528 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). While these clauses are "typically construed narrowly . . . 'courts apply the meaning that supports coverage rather than the one that limits it'" if the terms are ambiguous. Ibid. (quoting Flomerfelt, 202 N.J. at 442).

"The burden is the carrier's to bring the case within the policy exclusion." Burd, 56 N.J. at 399. If there is a causal link required by an exclusion, "courts must consider its nature and extent because evaluating that link will determine the meaning and application of the exclusion." Flomerfelt, 202 N.J. at 442-43. Alternatively, "if the exclusion uses terms that make it plain that coverage is unrelated to any causal link, it will be applied as

18

written," and we will "not read a causal nexus into the otherwise plain terms." Id. at 443.

Certain language in an exclusion makes clear that a causal link is required, for example, if the language requires that the injuries be "caused by" or "contributed to by" actions by the insured. See id. at 443-44; Contribute, Merriam-Webster, https://www.merriam-webster.com/dictionary/contribute (last visited July 11, 2022) ("to play a significant part in making something happen"). When the language does not explicitly require a causal element, the court must determine to what degree the policy intended a causal connection. Flomerfelt, 202 N.J. at 443.

In Flomerfelt, the exclusionary clause in the policy included the term "arising out of." Id. at 439. In that case, this Court noted previous case law had interpreted the phrase "expansively to define the link between the conduct and the covered activity as 'originating from,' 'growing out of' or having a 'substantial nexus.'" Id. at 452 (quoting Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 35 (1998)). The Court found that although "[e]ach of those potential definitions includes a causal link between the excluded act and the injury, . . . none requires that the excluded act be the proximate cause of the injury." Id. at 454.

We have not directly considered the meaning of the language "in any way connected with."  But, in Flomerfelt, we found the phrases "incident to" and "in connection with" to apply broadly, meaning "the injury is connected in any fashion, however remote or tangential."  Id. at 456.  Similarly, other courts have interpreted the meaning of "connected with" broadly, based on the dictionary definition of "connected."  See Misiti, LLC v. Travelers Prop. Cas. Co. of Am., 61 A.3d 485, 493 (Conn. 2013).  The Merriam-Webster dictionary defines "connected," in part, as "1.  joined or linked together" and "2.  having the parts or elements logically linked together."  Ibid.; see Connected, Merriam-Webster, https://www.merriam-webster.com/dictionary/connected (last visited July 11, 2022).

Although not in the insurance context, New Jersey courts have considered the language "related to" and interpreted it as being broader than "arising out of."  See Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc., 240 N.J. Super. 370, 375 (App. Div. 1990) ("An arbitration provision covering claims 'relating to' a contract is broader than one which covers claims merely arising out of a contract.").

When there are multiple phrases included in the exclusion itself, "courts separately consider the meaning of each phrase and then collectively analyze the intent of the exclusion."  Flomerfelt, 202 N.J. at 452.  A list of multiple

terms, separated by commas and the word "or," is disjunctive, and only one is necessary to trigger the exclusion. See Simmons v. Mercado, 247 N.J. 24, 41 (2021) ("The use of 'or' plainly indicates that any of those . . . listed actions is sufficient to satisfy the . . . definition.").

With those principles in mind, we turn to the exclusionary clause at issue here.

2.

Once again, the exclusionary clause lists which counties are excluded, and states that "[t]his insurance does not apply to 'bodily injury' . . . actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with . . . [a]ny operations or activities performed by or on behalf of any insured." The parties do not dispute the enforceability of that clause, but rather its applicability in this case.

Interpreting the clause, the Appellate Division considered the causes of action in Lorito's complaint and the activities of Richfield and found "no causal relationship." That comparison was not correct because the language of the exclusion clearly and unambiguously requires that the injuries, not the causes of action, be connected to the actions of the insured. Therefore, the appellate court should have considered the connection between Lorito's

21

injuries and Richfield's activities at the store to determine if the exclusion applies.

There is no dispute that Lorito was injured in Nassau County, one of the counties listed in the exclusionary clause. Therefore, the relevant issue is whether Richfield's activities at the store are sufficient to trigger the exclusion -- that is, did they "actually or allegedly aris[e] out of, [or are they] related to, caused by, contributed to by, or in any way connected with" the activities of Richfield or "on behalf of" Richfield? Because the exclusion test is disjunctive, each phrase in the exclusion must be considered separately, any one of which would be sufficient to trigger the exclusion. See Flomerfelt, 202 N.J. at 452; Simmons, 247 N.J. at 41-42.

With respect to that inquiry, the Appellate Division focused on a causal relationship, but that approach reads key language out of the policy. Ultimately, whether there is any causal connection between the actions and injuries is not dispositive because the phrases "in any way connected with" and "related to" have been interpreted broadly and do not require any element of causation.

Lorito was injured while using the blind cutting machine, which was provided by Richfield. The fact that Richfield provided the machine to Home Depot is enough to trigger the exclusion because the phrase "in any way

connected with" merely requires that the two are linked in some way, even if they are only tangentially connected. See Flomerfelt, 202 N.J. at 456. There is clearly a connection between Richfield providing the machine to Home Depot and Lorito's injuries: had Richfield not provided the machine to the Home Depot, Lorito would not have been using it and would not have accidently severed her fingers.

The connection between Richfield and Lorito's injuries does not stop there because Richfield did more than just provide the machine to Home Depot. Richfield employees went to the store on a regular basis to change the blades and fix the machine. And, of particular relevance here, Richfield provided a manual and trained employees on how to use the machine. Given those facts, the injuries were also "related to" Richfield's actions at the store. The record reflects Richfield's involvement in the sale of window blinds in this store, which included providing the machine, providing maintenance, and training Home Depot employees. That involvement is sufficient to connect Richfield with the use and operation of the blind cutting machine.

We hold that the activities by the insured constitute a sufficient basis to trigger the policy's Designated New York Counties Exclusion clause. The claim filed by Richfield is not a covered claim under the policy and Admiral did not have a duty to defend.

23

IV.

For those reasons, we reverse the judgment of the Appellate Division and remand the matter to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.